JEANE W. PULLING v. EDGAR O. DURFEE, JUDGE OF PROBATE OF WAYNE COUNTY.

*Husband and wife—Antenuptial contract—Allowances pending administration.*

An antenuptial agreement by which a woman releases all claim which she, as widow, may have, whether in right of dower or as her distributive share in the personalty or otherwise, under the laws of this State, cannot be extended so as to include statutory allowances pertaining to administration; the claims referred to being those which she, as widow, would be entitled to make at the time of the distribution of the estate.

*Mandamus.* Submitted January 23, 1891. Granted February 27, 1891.

Relator applied for *mandamus* to compel respondent to set aside an order denying to relator an allowance out of the estate of her deceased husband pending the settlement of his estate, and to make such order of allowance. The facts are stated in the opinion.

*Fraser & Gates,* for relator, contended for the doctrine of the opinion.

*Charles B. Lothrop,* for respondent, contended:

1. In the following cases words quite as general as those used in this agreement are held to include allowances: *Cowdrey v. Hitchcock,* 103 Ill. 263; *Tiernan v. Binns,* 92 Penn. St. 248; *Mack v. Heiss,* 90 Mo. 578.

McGRATH, J. This is an application for a *mandamus* to compel respondent to set aside an order made in the matter of the estate of Henry P. Pulling, deceased, denying to relator an allowance out of said estate for her support pending its settlement, and to enter an order making such allowance. The return sets up the proceedings had below on the application for said allowance, together with the testimony taken at the hearing. Attached is a copy of a paper purporting to be an antenuptial agreement between petitioner and Henry P. Pulling, which was duly acknowledged, and is as follows:

"Agreement, made this 21st day of April, 1890, between Henry P. Pulling of the first part, and Jeane W. Lindsay of the second part, both of the city of Detroit, Michigan, witnesseth:

"Whereas, the said parties are about to enter into the bonds of matrimony with each other, and the second party is desirous of barring all of her right of dower and all of her right to share in the estate, both real and personal, of the first party, in case she shall survive him:

"Now, therefore, the second party hereby acknowledges the receipt from the first party of the sum of five (5) dollars in lieu of all her right of dower and her right to share in the estate, both

real and personal, of the first party, in the event of such marriage, and of her surviving the first party; and in consideration of said payment, and of love and affection, the second party hereby agrees to release, and does release, all claim which, upon the death of the first party, she as his widow may have in his estate, whether in right of dower or as her distributive share in the personalty or otherwise, under the laws of the State.

"The second party makes this agreement for the purpose of substituting this present gift of money in lieu of all the property rights which such marriage, if entered into, may confer upon her under the law.

"In witness whereof both of said parties have hereunto set their hands and seals.

"HENRY P. PULLING.

"JEANE W. LINDSAY.

"In presence of—

"R. T. GRAY.

"WM. J. GRAY."

The following declaration, signed on the date thereof by petitioner, is also attached to the return:

"In contemplation of a marriage between myself and Henry P. Pulling, of Detroit, Michigan, I have already executed a deed relinquishing all of the rights conferred upon me by law, in case I should survive him, intending thereby in case of his death, whether dying intestate or not, to surrender all rights in his property, which but for said deed would have been mine. I have also signed a statement that my rights in the premises have been fully explained to me by William J. Gray, namely, the income for life on one-third of his real estate, and an interest in the personal estate, being about one-third thereof; which interest I understand, in case the said Henry P. Pulling should die intestate, without at least two children, might vary from one-third thereof to the whole thereof. I now affirm that Mr. Gray explained to me that I had no information of the value in money of the rights I was surrendering, and I replied to him, and I repeat now, that the money value makes no difference in my action. I do not care to know the value of the estate of the said Henry P. Pulling; it is the same to me whether it be one thousand dollars or five hundred thousand dollars. In view of the information that the value of his estate may be five hundred thousand dollars, I repeat and confirm my said deed of relinquishment. I sign this statement, that there may be no question but that I fully understood what I was doing.

"JEANE W. LINDSAY.

"April 23, 1890."

Also a paper dated on the day of the marriage, signed

by Henry P. Pulling, and found after his death in the First National Bank of Detroit, where it had been deposited by him, with the other two papers above named, a copy of which is as follows:

"DETROIT, 26 April, 1890.

"*To Whom it May Concern:*

"My purpose in having these documents executed by Jeane W. Lindsay, my intended wife, is to avoid delay or embarrassment in the final settlement of my estate, when the time comes to do it, as her legal right of dower would interfere with or prevent a distribution of the property during her life. We discussed the subject fully, and it is understood between us that I expect to provide for her future, consistent with my ability in a financial way, and according to the circumstances and feelings which may obtain through the effects of our married relation. She confides in me entirely about doing for her what is just and proper in consideration of my family, and all the surroundings that would naturally influence my decision as to a satisfactory arrangement of this at present open question.

"HENRY P. PULLING."

It further appeared that said Henry P. Pulling during his life-time, and after his marriage with said petitioner, executed a deed conveying to her a life-interest in the homestead occupied by him, No. 104 High street east, in Detroit (which homestead is of the value of $10,000 or thereabouts), and also a bill of sale for her life of the furniture owned by him therein, which said deed and bill of sale were deposited in escrow, with instructions to deliver the same to Jeane W. Pulling on the death of said Henry P. Pulling, and which deed and bill of sale were on his death actually delivered to said Jeane W. Pulling, the petitioner, and have since been retained by her.

Henry P. Pulling died testate, making no provision in his will for his widow. The probate court refused to grant the allowance, upon the ground that petitioner had, by a contract entered into with said Henry P. Pulling in contemplation of marriage, relinquished her right to said allowance.

Irrespective of the questions raised with reference to the jurisdiction of the probate court to consider and construe said agreement, I am of opinion that the antenuptial agreement does not warrant the construction given to it by the probate court. How. Stat. § 5755, provides that—

"A widow may remain in the dwelling-house of her husband one year after his death without being chargeable with rent therefor, and shall have her reasonable sustenance out of his estate for one year."

And by section 5813 it is provided that—

"The probate court may make such reasonable allowance as may be judged necessary for the expenses of the maintenance of the widow and minor children, or either, constituting the family of the testator, out of his personal estate, or the income of his real estate, during the progress of the settlement of the estate, but never for a longer period than until their shares in the estate shall be assigned to them."

The language of the agreement is that relator releases all claim which she as widow may have, whether in right of dower or as her distributive share in the personalty or otherwise, under the laws of the State. The instrument, found with the other papers, dated April 26, 1890, and signed by Henry P. Pulling only, expresses his purpose in having the documents executed, viz.:

"To avoid delay or embarrassment in the final settlement of my estate, when the time comes to do it, as her legal right of dower would interfere with or prevent a distribution of the property during her life."

The making of an allowance to the widow in no way interferes with or delays the settlement of the estate. Had provision been made by will for relator, "in lieu of all claims for dower and her distributive share in the personalty or otherwise, under the laws of the State," and had she expressly elected to take under the will, it

could not be claimed that before distribution, and pending the settlement of the estate, she would not be entitled to an allowance under this statute. If the consideration for the release on the wife's part had been a promise to provide a legacy by will for a given amount, and he had so provided, she would be entitled to the allowances provided by statute, until such legacy should be distributed, and it would be harsh to say that, because no provision is made for her by will, she is not entitled to the statutory allowance.

The statutory provisions are clearly intended to protect the widow and children during the progress of the settlement of estates, and pending distribution. The first subdivision of How. Stat. § 5847, relating to the distribution of estates, makes the allowance to the widow of the household furniture and other personal property dependent upon a waiver of the provisions made for her in the will; but the very next subdivision of this same section provides for an allowance to the widow and family for maintenance, and neither this subdivision, nor any of the other statutory provisions referred to, make the allowances therein provided for contingent upon any such waiver. Such allowances are usually among the very first proceedings after administration is granted, and precede the widow's election, and the payment of both debts and legacies are subject to them. In the case of *Moore v. Moore,* 48 Mich. 271, the court below held that the widow was not entitled to an allowance because she had provision made by the will; but we held that such allowance was proper, even though there were no children, and the widow was provided for by legacy. The Court, referring to the statutory provision, say:

"This provision is as necessary where legacies are left as where they are not, and the statute was passed to avoid the cruelty of leaving a family exposed to want

during the interval of settlement. The statute is full, and in no way doubtful, and the allowance was proper."

In *Miller v. Stepper*, 32 Mich. 194, 202, the Court say:

"Whether provision is or is not made by the will in favor of the widow, the debts must be paid, and the expenses and allowances pertaining to administration must likewise be satisfied. These depend upon considerations superior to the testator's right to dispose by way of testamentary gift, and, so far as necessary, they must always control the dispositions of the will. Now, we understand the allowances provided for in chapter 156, Comp. Laws, to belong to the matter of administration of the estate, and to rest on higher grounds than the claims of distributees. They are quite distinct from distribution, and are inseparably connected with the course of settlement of the estate. They are grounded upon a policy not unlike that which allowed the widow her quarantine and reasonable estovers at common law, and in some measure are deemed suitable means to enable administration to be carried to that stage at which distribution may be made; and the testator by the terms of his will can no more positively exclude them than he can the payment of debts and the legal charges of administration."

The agreement here was intended to bar relator's "right of dower, and all of her right to share in the estate," and cannot be extended to include statutory "allowances pertaining to administration." The claims referred to are those which she, as widow, would be entitled to make at the time of the distribution of the estate.

The *mandamus* will issue (with costs to relator to be paid out of the estate) directing the judge of probate to set aside the order disallowing an allowance to the said Jeane W. Pulling in the matter of the estate of Henry P. Pulling, deceased, and requiring said probate judge to proceed under the statute to make proper allowances to said widow.[1]

The other Justices concurred.

[1] See *Freeman v. Probate Judge*, 79 Mich. 390.