ESTATE of J. Wendell GREEN, Deceased, William B. Hartman and Mable B. Honeywell, Co-administrators, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 20649.

United States Court of Appeals, Sixth Circuit.

April 16, 1971.

Stephen H. Hutzelman, Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., on brief; Ralph B. Guy, Jr., U. S. Atty., Harold Hood, Asst. U. S. Atty., Detroit, Mich., of counsel.

James L. Howlett, Bloomfield Hills, Mich., for plaintiffs-appellees; Hartman, Beier, Howlett, McConnell & Googasian, Bloomfield Hills, Mich., on brief.

Before WEICK, EDWARDS and BROOKS, Circuit Judges.

EDWARDS, Circuit Judge.

The only issue presented by this case is whether or not the widow's allowance provided by Michigan law (Mich.Stat. Ann. § 27.3178(138) (1962), M.C.L.A. § 702.68) is subject to the federal estate tax marital deduction provided by Congress in INT.REV.CODE of 1954, § 2056 (a), or on the contrary, is taxable as a "terminable interest" under § 2056(b). The District Court held the Michigan widow's allowance was not "terminable" and the government appeals.

This issue has been squarely decided in two prior cases, one in the District Court (Estate of Reynolds v. United States, 189 F.Supp. 548 (E.D.Mich. 1960)), and one in the Tax Court (Estate of Rensenhouse v. Commissioner, 31 T.C. 818 (1959)). The District Court relied on these cases for decision in favor of the taxpayer in this case. The government claims, however, that a more recent United States Supreme Court case, Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964), requires reversal.

This case was submitted on stipulated facts—the relevant portions of which follow:

1. The decedent, J. Wendell Green, died testate on May 22, 1964, a resident of Michigan.

2. Letters testamentary were issued by the Probate Court of the County of Oakland, Pontiac, Michigan, in case No. 84752 to administrators Mable E. Honeywell and William B. Hartman, the plaintiffs, on July 20, 1964.

3. The defendant is the United States of America.

4. This is an action brought by the plaintiffs for the refund of federal estate taxes.

5. The administrators timely filed the estate tax return (Form 706) on

August 20, 1965 reporting net estate taxes payable of $282,810.36, which amount was paid in full with the filing of the return.

6. Upon the audit of that return, the Commissioner of Internal Revenue, through his agents, determined that the estate was entitled to a refund of tax of $11,813.08, and interest of $1,063.18. The plaintiff Co-Administrators have claimed, and are seeking in this litigation, a refund over and above the amount determined by the Commissioner to be due them.

7. In 1926, J. Wendell Green, the defendant herein, married Ruth H. Green, his surviving spouse. Under the fourth article of decedent's will, his surviving spouse was bequeathed a life interest in a residuary trust consisting for all practicable purposes of decedent's entire probate estate.

8. On November 4, 1964, decedent's surviving spouse filed an election with the Oakland County Probate Court not to abide by the terms of the will but to take that share of decedent's real estate and personal property provided for in paragraph Third, Michigan Statutes Annotated 27.3178(139), M.C.L.A. § 702.69.

9. Pursuant to Section 1, Michigan Statutes Annotated 27.3178(138) and an implementing order of the Oakland County Probate Court, decedent's surviving spouse was paid from the principal of the estate a widow's allowance of $18,000. In computing the allowable marital deduction, the estate considered the widow's statutory right to the widow's allowance as properly qualifying for the marital deduction.

10. In computing the refund due of $11,813.08, the District Director of Internal Revenue Service determined that in Michigan the widow's allowance does not qualify for marital deduction.

11. The sole issue in this case is whether, as a matter of law, the terminable interest rule set forth in Section 2056(b)(1) of the Internal Revenue Code is applicable so as to disqualify a Michigan widow's allowance from eligibility for the marital deduction provided by Section 2056(a) of the Internal Revenue Code.

12. For purposes of this action, if the funds in fact paid to the surviving spouse as a widow's allowance had not been so paid, an interest in such property would have passed from the decedent to persons other than the surviving spouse under the provisions of the decedent's will, and those funds would have been disqualified for the marital deduction under the provisions of Sections 2056(a)(1)(A) and (B) of the Internal Revenue Code.

The legal background of this controversy has been outlined by the United States Supreme Court in the *Jackson* case upon which the government relies.

In enacting the Revenue Act of 1948, 62 Stat. 110, with its provision for the marital deduction, Congress left undisturbed § 812(b)(5) of the 1939 Code, which allowed an estate tax deduction, as an expense of administration, for amounts "reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent." 26 U.S.C. (1946 ed.) § 812(b)(5). As the legislative history shows, support payments under § 812(b)(5) were not to be treated as part of the marital deduction allowed by § 812(e)(1).[3] The Revenue Act

3. S.Rep.No.1013, Part 2, 80th Cong., 2d Sess., p. 3.

of 1950, 64 Stat. 906, however, repealed § 812(b)(5) because, among other reasons, Congress believed the section resulted in discriminations in favor of States having liberal family allowances.[4] Thereafter allowances

4. The legislative history states: "In practice [the support allowance deduction] has discriminated in favor of estates located in States which authorize liberal allowances for the support of dependents, and it has probably also tended to delay the settlement of estates." S.Rep.No.2375, 81st Cong., 2d Sess., p. 57.

paid for the support of a widow during the settlement of an estate "heretofore deductible under section 812(b) will be allowable as a marital deduction subject to the conditions and limitations of section 812(e)." S.Rep. No.2375, 81st Cong., 2d Sess., p. 130.

The "conditions and limitations" of the marital deduction under § 812(e) are several but we need concern ourselves with only one aspect of § 812(e) (1) (B), which disallows the deduction of "terminable" interests passing to the surviving spouse. It was conceded in the Court of Appeals that the right to the widow's allowance here involved is an interest in property passing from the decedent within the meaning of § 812(e) (3), that it is an interest to which the terminable-interest rule of § 812(e) (1) (B) is applicable, and that the conditions set forth in (i) and (ii) of § 812(e) (1) (B) were satisfied under the decedent's will and codicils thereto. The issue, therefore, is whether the interest in property passing to Mrs. Richards as widow's allowance would "terminate or fail" upon the "lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur."

Jackson v. United States, *supra* at 505–506, 84 S.Ct. at 871 (Footnotes in quotation.)

The Court thereupon decided the question by reference to the law of California which was therein involved:

We accept the Court of Appeals' description of the nature and characteristics of the widow's allowance under California law. In that State, the right to a widow's allowance is not a vested right and nothing accrues before the order granting it. The right to an allowance is lost when the one for whom it is asked has lost the status upon which the right depends. If a widow dies or remarries prior to securing an order for a widow's allowance, the right does not survive such

death or remarriage. The amount of the widow's allowance which has accrued and is unpaid at the date of death of the widow is payable to her estate but the right to future payments abates upon her death. The remarriage of a widow subsequent to an order for an allowance likewise abates her right to future payments. 317 F. 2d 821, 825.

In light of these characteristics of the California widow's allowance, Mrs. Richards did not have an indefeasible interest in property at the moment of her husband's death since either her death or remarriage would defeat it. If the order for support allowance had been entered on the day of her husband's death, her death or remarriage at any time within two years thereafter would terminate that portion of the interest allocable to the remainder of the two-year period. As of the date of Mr. Richards' death, therefore, the allowance was subject to failure or termination "upon the occurrence of an event or contingency." That the support order was entered in this case 14 months later does not, in our opinion, change the defeasible nature of the interest. Jackson v. United States, *supra* at 506–507, 84 S.Ct. at 871–872.

This court has already applied the *Jackson* case to a widow's "year's support" allowed by Tennessee law and held that under the Tennessee statute and case law, the widow's interest is terminable. Hamilton National Bank of Knoxville v. United States, 353 F.2d 930 (6th Cir. 1965).

Michigan statutory and case law, however, has caused the lower courts to hold that the Michigan widow's allowance is a right which vests at her spouse's death and is not defeated by her death or remarriage. This is the basic holding set forth in the opinions of Judges Levin and Keith in the United States District Court for the Eastern District of Michigan in Estate of Reynolds v. United States, *supra,* and the instant case, and

in the opinion of the Tax Court in Estate of Rensenhouse v. Commissioner, *supra.*

While we agree with the holding of these cases and much of their reasoning, we are not controlled by them and we have made a wholly independent review of the Michigan law on widow's allowance.

The basic provision is found in § 27.-3178(138) of the Probate Code:

(1) The widow and minor children constituting the family of a deceased man shall have such reasonable allowances out of the real and personal estate of such deceased as the probate court shall judge necessary for their maintenance during the progress of the settlement of the estate according to their circumstances but never for a longer period than until their shares in the estate shall be assigned to them nor for more than 1 year after the death of the decedent in an insolvent estate. On showing of necessity, such allowances may be continued from time to time in any solvent estate beyond such year, but such allowances beyond such year shall be charged as advancements from the estate against the interest of the widow or against the interests of the minor children, as the case may be. Mich.Stat.Ann. § 27.3178(138), sec. 68 (1962).

This requirement, in all essentials, has been part of Michigan law at least since 1846. The language of the grant is mandatory and the section contains no stated contingencies which would make the grant terminable, unless the fact that it requires probate proceedings to fix the amount be so construed. We deal with this argument below.

Michigan case law is not crystal clear in its application of this statute and its predecessors. Perhaps the only absolute consistency to be found is a strong predeliction in favor of the widow and her allowance.

In Pulling v. Durfee, Probate Judge, 88 Mich. 387, 50 N.W. 319 (1891) and Pulling v. Durfee, 85 Mich. 34, 48 N.W.

48 (1891), the mandatory nature of the widow's allowance statute was emphasized by the Michigan Supreme Court.

In Bacon v. Judge of Probate, 100 Mich. 183, 58 N.W. 835 (1894), the Michigan Supreme Court said:

"Indeed, as to yearly allowance, it is an absolute vested right, and the probate court would have no authority, under the statute, to withhold it from her. Brown v. Joiner, 77 Ga. 232, 3 S.E. 157; Dorah v. Dorah, 4 Ohio St. 292; Pulling v. Durfee Probate Judge, *supra* [88 Mich. 387, 50 N.W. 319]." Bacon v. Judge of Probate, *supra* at 189, 58 N.W. at 837.

In Montgomery v. Trombley, 276 Mich. 439, 267 N.W. 648 (1936), the Michigan Supreme Court said:

"When Mr. Trombley executed his will in 1924, he was chargeable with knowledge of the amended statute under which the probate judge was bound to make an allowance." Montgomery v. Trombley, *supra* at 441, 267 N.W. at 649.

Although we recognize some dictum in Isabell v. St. Clair Probate Judge, 259 Mich. 100, 103, 242 N.W. 853 (1932), which may be argued to the contrary, none of the cases cited above has been overruled and they remain, as we see the matter, the recognized law of Michigan.

The *Isabell* case is itself authority for the proposition that the widow's right to the allowance is not terminated by death. And in the *Bacon* case, the court said on the question of remarriage:

"We see no good reason for saying, under the circumstances here stated, that the widow could not make claim for this allowance after her marriage as well as before. She was absolutely entitled to it for one year, and it was within the discretion of the probate judge to make further allowance to her during the progress of the settlement of the estate." Bacon v. Judge of Probate, *supra* 100 Mich. at 188, 58 N.W. at 837.

However this may be, unless we misread the government's brief, this is not appellant's main reliance.

The government's main argument appears to us to be that even if the Michigan widow's allowance statute creates a property right in the widow which vests as of her spouse's death, and is not terminated by her death or her remarriage, it should nonetheless be held to be terminable under § 2056(b) because 1) the vested right is "inchoate" and can only be fixed in amount by the Probate Court proceeding and order determining "reasonable allowances," and 2) because in any event, the widow must file a petition for the allowance and, hence, impliedly might waive the allowance by failing to file.

There is no doubt that both of these representations are correct, but we do not agree with the government's conclusion as to their effect under the Code and under the *Jackson* case. Indeed, it seems to us if either of these conditions were held to be an "event or contingency" occasioning terminability under § 2056(b), that we would be holding that Congress for all practical purposes had repealed the Allowance for Marital Deduction. This interpretation seems to us absolutely repugnant to the specific language of § 2056(a):

> (a) *Allowance of Marital Deduction.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, * * *. Int.Rev.Code of 1954, § 2056(a).

It is also repugnant to the intent of Congress, as provided in the applicable Conference Committee report on the Internal Revenue Code of 1954:

> Amendment No. 273: This amendment strikes out subsection (b)(7) of

section 2056 which would have specifically excepted from the terminable interest rule generally applicable to the estate tax marital deduction payments for the support of the surviving spouse within 1 year of the decedent's death. In repealing the deduction for support of dependents formerly allowed by section 812(b) and providing that such amounts will be allowable as a marital deduction, the report of the Committee on Ways and Means on the Revenue Act of 1950 (Rept. No. 2319, 81st Cong.) stated:

> > Under existing law amounts expended in accordance with the local law for support of the surviving spouse of the decedent are * * * not allowable as a marital deduction under section 812(e) of the Code. However, as a result of the amendment made by this section, such amounts heretofore deductible under section 812(b) will be allowable as a marital deduction subject to the conditions and limitations of section 812(e).[1]

> Many of these "widows' allowances" should qualify for the marital deduction under present law without regard to the time of payment. Therefore, the added complications of this section are largely unnecessary. The House recedes. Note: Footnote in quote. H.Conference Rep.No.2543, 83rd Cong. 2d Sess., U.S.C.Cong. & Adm. News 5280, 5336 (1954).

It seems clear to us that the House recession from its proposed amendment was based upon an interpretation of Section 2056(a) and (b) which the Internal Revenue Service in this appeal seeks to overturn completely.

Further, in Hamilton National Bank of Knoxville v. United States, 353 F.2d 930 (6th Cir. 1965), this court said, concerning the widow's allowance:

> It has been uniformly held the compensation qualifies for the marital deduction, and invoking the necessary legal procedures to enforce the right is

---

1. Int.Rev.Code of 1939, §. 812(e) contained provisions similar to present § 2050(b).

**308**

not a condition or contingency precedent to its existence. United States v. Crosby, 257 F.2d 515 (C.A.5, 1958); Dougherty v. United States, 292 F.2d 331 (C.A.6, 1961); United States v. Hiles, 318 F.2d 56 (C.A.5, 1963); First National Bank Exchange of Roanoke v. United States, 335 F.2d 91 (C.A.4, 1964); Moore v. United States, 214 F.Supp. 603 (D.C., Ky., 1963); Wachovia Bank and Trust Co. v. United States, 234 F.Supp. 897 (D. C., N.C., 1964); Tax Regulations, Sec. 20.2056(e)–2(c).

To hold that an interest is terminable only because legal procedures are invoked to enforce an interest which is otherwise vested at the date of the husband's death, is to hold that all elective rights, such as the widow's allowance and the statutory interest in lieu of dower, are disqualified as marital deductions. Hamilton National Bank of Knoxville v. United States, *supra* at 932. (Footnote omitted.)

The judgment of the District Court is affirmed.