ESTATE OF HARLIN A. RADEL, DECEASED, LORRAINE L. RADEL, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 29631-84.        Filed May 4, 1987.

*Richard E. Tollefson*, for the petitioner.
*Genelle F. Forsberg*, for the respondent.

OPINION

GERBER, *Judge*: Respondent, by statutory notice dated May 21, 1984, determined a deficiency of $19,975.94 in Federal estate tax of the Estate of Harlin A. Radel. The issues for our consideration are (1) whether, under Minnesota law, the "spouse allowance" is a terminable interest for purposes of determining the marital deduction pursuant to

section 2056,[1] and (2) whether any portion of the homestead interest qualifies for the marital deduction where the surviving spouse disclaims her life estate and the remainder interest is held by the children.

This case has been submitted fully stipulated pursuant to Rule 122. The stipulation of facts and accompanying exhibits are incorporated herein by reference.

Lorraine L. Radel (Lorraine) is the personal representative of the petitioner, and wife of Harlin A. Radel (decedent). She resided in Owatonna, Minnesota, at the time the petition was filed. The Federal estate tax return for decedent's estate was timely filed with the Internal Revenue Service Center, Ogden, Utah.

Decedent died intestate on September 15, 1980. He was survived by his wife and their three adult children. At the time of his death, decedent individually owned approximately 115 acres of farmland located in Steele County, Minnesota. The farmland was included in decedent's gross estate at a value of $210,000,[2] of which $158,400 was attributable to the homestead of decedent and Lorraine.[3] The gross estate included other property totaling $86,241.04.

On November 14, 1980, 2 months after decedent's death, Lorraine petitioned the Probate Court for a "spouse allowance"[4] under Minnesota law. On December 2, 1980, the court issued an order directing the estate to pay to petitioner the sum of $27,000 as a "spouse allowance." This allowance was directed to be paid in installments of $1,500 per month.[5]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of the decendent's death. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The parties have stipulated that the farmland had a value of $210,000 instead of $198,375 as originally stated on the return. To reflect that agreement, the taxable estate was increased by $11,625.

[3] Generally, the term homestead refers to the fixed residence of the head of the family, along with the surrounding land and buildings. It is an estate in realty, statutorily devised to protect its possession and enjoyment by the head of the family and surviving spouse against the claims of creditors, so long as the property is occupied as a home. In the present case the homestead encompassed 80 of the 115 acres of farmland.

[4] The "spouse allowance" refers to an allowance paid to a decedent's surviving spouse for maintenance and support pending settlement of an estate.

[5] The full $27,000 was paid by the estate.

On March 17, 1981, Lorraine filed a disclaimer with the Probate Court[6] disclaiming her life estate in the homestead which passed to her pursuant to section 525.145, Minnesota Statutes Annotated (West 1975).[7]

Decedent's property interests passed to his wife and their children, pursuant to Minnesota laws of intestacy, as follows:

*Personal property*: one-third to surviving spouse, the remainder in equal shares to the three children. See secs. 525.16(1) and (4)(a), Minn. Stat. Ann.

*Real property* (excluding the homestead):[8] an undivided one-third to surviving spouse, the remainder in equal shares to the three children. See secs. 525.16(2) and (4)(a), Minn. Stat. Ann.

*Homestead*: to surviving spouse for the term of her natural life; remainder in equal shares to the three children. See sec. 525.145, Minn. Stat. Ann.

Among the deductions taken on decedent's estate tax return was $27,000 attributed to the "spouse allowance" and $52,800, attributed to the value of a one-third fee interest in the homestead.[9] Respondent disallowed two-thirds of the "spouse allowance"[10] and the deduction for a one-third interest in the homestead.

### The "Spouse Allowance"

Respondent argues that the "spouse allowance" as provided under Minnesota law is a terminable interest within the meaning of section 2056. Consequently, this allowance cannot qualify for the marital deduction. Petitioner strongly urges us to construe the "spouse allowance" as a nonterminable interest within the meaning of section 2056. Petitioner contends that under Minnesota law, the "spouse

[6]Respondent does not dispute the validity of this disclaimer for Federal tax purposes. It is, therefore, accepted as a valid disclaimer for purposes of both State and Federal estate tax law.

[7]Lorraine alternatively disclaimed her life estate in all but the home and building site. Because we have accepted Lorraine's disclaimer of her life interest in the homestead as a valid disclaimer, we will address this argument only.

[8]Sec. 525.16, Minn. Stat. Ann. (West 1975), which provides for the distribution of real property, specifically excludes the homestead. Distribution of the homestead is governed by sec. 525.145, Minn. Stat. Ann.

[9]The parties have agreed to an additional deduction of $1,063 for appraisal fees incurred by the estate, and an additional deduction of $4,998.34 for attorney fees and expenses incurred by the estate in connection with the tax liability disputed herein.

[10]Under respondent's theory, Lorraine would have otherwise received a one-third interest in decedent's property, therefore, only one-third of the money she received as "spouse allowance" qualifies for the marital deduction as provided in sec. 2056.

allowance" is mandatory and contains no stated contingencies or conditions, therefore, it absolutely vests upon the decedent's death.

Section 2056(a) allows a marital deduction from the gross estate in an amount equal to the value of any interest in property which passes or has passed from the decedent to a surviving spouse. Section 2056(b), however, disallows the deduction if the interest passing to the surviving spouse will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur."[11] This is referred to as the terminable interest rule.

Whether the "spouse allowance" as provided under Minnesota law constitutes a terminable interest within the meaning of section 2056 must be determined as of the date of decedent's death. *Jackson v. United States*, 376 U.S. 503, 508 (1964); *Allen v. United States*, 359 F.2d 151, 154 (2d Cir. 1966); see also *Estate of Snider v. Commissioner*, 84 T.C. 75, 79 (1985). Petitioner's right to the "spouse allowance" as of the date of decedent's death must be determined under the law of Minnesota. *Estate of Abely v. Commissioner*, 60 T.C. 120, 123 (1973), affd. 489 F.2d 1327

---

[11]Sec. 2056 provides, in pertinent part, as follows:

SEC. 2056(a). ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B)—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

(1st Cir. 1974). If, under Minnesota law, the surviving spouse's right to a "spouse allowance" vests upon the decedent's death but terminates or fails upon the occurrence of stated contingencies such as death or remarriage of such spouse, then the "spouse allowance" is a terminable interest within the meaning of section 2056(b)(1). *Estate of Abely v. Commissioner, supra* at 123; *Hamilton National Bank of Knoxville v. United States*, 353 F.2d 930, 932 (6th Cir. 1965); see *Estate of Green v. United States*, 441 F.2d 303, 305 (6th Cir. 1971).

The parties do not dispute that Minnesota law governs this issue; they disagree about the interpretation that should be applied to the relevant statute. The statute provides, in pertinent part, as follows:

525.15. Allowances to spouse
When any person dies, testate or intestate,

(1) The surviving spouse *shall be allowed* from the personal property of which the decedent was possessed or to which he was entitled at the time of his death, the wearing apparel, and, as selected by him, furniture and household goods not exceeding $2,000 in value, and other personal property not exceeding $1,000 in value;

      \*     \*     \*     \*     \*     \*     \*

(4) During administration, but not exceeding 18 months, unless an extension shall have been granted by the court, or, if the estate be insolvent, not exceeding 12 months, the *spouse* or children, or both, constituting the family of the decedent *shall be allowed* reasonable maintenance;

[Sec. 525.15, Minnesota Statutes Annotated (West 1975). Emphasis added.]

The grant language of section (1) of this statute has been interpreted numerous times by the Minnesota courts, however, this same language has never been construed within the context of section (4). Petitioner urges us to apply the Minnesota Supreme Court's interpretation of this language as used in section (1) to the grant language of section (4). Respondent, on the other hand, contends that the grant language of section (4) cannot be given the same interpretation as the grant language of section (1). Rather, respondent argues that a correct interpretation of section (4) requires us to find that unlike the interest granted under section (1) the "spouse allowance," created by the grant language of

section (4), is a terminable interest within the meaning of section 2056.

Because the underlying law involved is Minnesota law, we look to the Minnesota Supreme Court for its appropriate interpretation. We would be bound by the Minnesota Supreme Court's interpretation of the statute involved, but it has not specifically interpreted section (4). *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967).

In *In re McBride's Estate*, 195 Minn. 319, 263 N.W. 105 (1935), the Supreme Court of Minnesota was asked to interpret the grant language of the predecessor of section 525.15(1) which provided that—

*The widow shall be allowed* the wearing apparel of her deceased husband, his household furniture not exceeding five hundred dollars in value, and other personal property not exceeding the same amount, both to be selected by her; and she shall receive such allowances when she takes the provisions made for her by her husband's will as well as when he dies intestate. [Emphasis added.]

There the court held that the surviving spouse's right to the personal property of the deceased spouse, as statutorily provided, was an absolute vested right at the date of the spouse's death.[12] In *Sevcik v. Commissioner of Taxation*, 257 Minn. 92, 100 N.W.2d 678 (1959), the Supreme Court of Minnesota again held that under section 525.15(1), Minn. Stat. Ann., a surviving spouse has, at the date of the spouse's death, an absolute vested right to the wearing apparel, fixtures, furniture, and household goods in the amount limited by statute.[13] The court, in reaching this conclusion, determined that the statutory language that created this right was mandatory and contained no stated contingencies. We are aware that section (1) creates a right in tangible property whereas section (4) creates a property

---

[12] In *In re McBride's Estate*, 195 Minn. 319, 263 N.W. 105 (1935), the issue before the court was whether a surviving spouse's mere assent and consent to the will of his wife, without any consideration and without any assignment of his rights or transfer by him of any allowance to which he was entitled in his wife's estate, deprived him of making the selection and receiving the personal property provided for him by the statute. The court held that this allowance to the surviving spouse is a distinct and different provision from the general law of descent; the personal property allowed pursuant to this right is not a part of the estate for the purposes of administration in the Probate Court.

[13] In *Sevcik v. Commissioner of Taxation*, 257 Minn. 92, 100 N.W.2d 678 (1959), the Commissioner of Taxation argued that the inheritance tax against the estate should be determined without allowing a deduction for the statutory amount of fixtures, furniture, and household goods granted to the spouse.

right closely akin to a "chose in action" or an intangible property right. We cannot, however, overlook the court's analysis of the same grant language when the interpretation of this same language was before the Minnesota Supreme Court.

An examination of section 525.15(1) and (4), Minn. Stat. Ann., reveals that the grant language used in both sections is essentially the same. Section (1) states that "The surviving *spouse shall be allowed*," and section (4) states that "*the spouse* * * * shall be allowed." (Emphasis added.) Respondent urges us to interpret the grant language of section (1) as mandatory and the grant language of section (4) as contingent. Respondent has not persuaded us that such a dichotomy should exist. In the absence of clear contingencies, we are unable to interpret this language as mandatory and definite in one section and contingent and imprecise in the other.

Respondent contends that a distinction must be made between the right granted to the surviving spouse under section 525.15(1) and the right granted under section 525.15(4). Respondent places great reliance on both *Sammons v. Higbie's Estate*, 103 Minn. 448, 115 N.W. 265 (1908), and a perceived interpretation of the predecessor of section 525.15(4), Minn. Stat. Ann. This reliance is misplaced.

In *Sammons v. Higbie's Estate, supra*, the issue before the Minnesota Supreme Court was whether the abandonment by one spouse of the other would bar the statutory right of such surviving spouse to a stipulated amount of personal property of the abandoned spouse, as provided under section 525.15(1). The court held that the statutory grant of section (1) was mandatory and could not be barred by the abandonment of one spouse by the other, as long as the marital relationship existed at the date of death of the abandoned spouse. The court noted that the estate had cited a number of authorities to support the contention that such an abandonment would bar an otherwise valid claim to "spouse allowance." Although the court's dicta included the statement that the cases supported the argument as applied to the "spouse allowance," that statement concerned a predecessor to section 525.15(4), Minn. Stat. Ann., which

did not contain the mandatory grant language present in this case. Any analysis by the *Sammons'* court of the predecessor of the statute involved in the present case is, at best, exiguous.

We must take cognizance of the fact that section (4) of the statute was amended during 1935 and the discretionary language was deleted.[14] The language *"shall have such reasonable* allowance out of his personal estate *as the probate court deems necessary"* was replaced by the language "the *spouse or children,* or both, constituting the family of the decedent *shall be allowed reasonable maintenance."* (Emphasis added.) Therefore, we find that the right to the "spouse allowance" as provided under Minnesota law is a vested right in the surviving spouse at the date of the decedent's death.

Respondent contends that even if we interpret the right to the "spouse allowance," as provided under Minnesota law, to be a vested right at the date of the decedent's death, it is not indefeasibly vested because it is subject to the contingencies of death and remarriage. Respondent has failed to cite authoritative precedent for this argument.[15] We do not find persuasive respondent's reliance on hornbook text material or his contention that at common law the right to the "spouse allowance" terminates upon death or remarriage.[16] Respondent has not shown that under Minnesota law these contingencies are fatal and, accordingly, we find respondent's position contrary to the plain language of the statute.

---

[14]The statute prior to 1935 stated, in pertinent part, as follows:

3. *The widow or children or both,* constituting the family of the decedent, *shall have such reasonable allowance out of his personal estate as the probate court deems necessary* for their maintenance during the settlement of the estate according to their circumstances, which in case of an insolvent estate shall not be longer than one year after administration is granted, nor in any case after the distributive share of the widow in the residue of the personal estate has been assigned to her; and such reasonable allowance may be made by the court when the husband or father has left a will, as well as when he dies intestate. [1903 Minn. Laws ch. 334 at 581; emphasis added.]

[15]See note 18 *infra.*

[16]Respondent cites a single unsupported sentence from sec. 13.4-03(3)(b)(vi)A, R. Stein, Probate, Robert A. Stein, which states that "an allowance under MSA sec. 525.15(4) for the maintenance of the decedent's family is a nondeductible interest since it will abate or terminate on the spouse's death or remarriage." In the absence of supporting authority for this statement we cannot accept it as controlling or persuasive on this point. Respondent argues that this is consistent with common law but fails to demonstrate why the mandatory grant language should not be read as overriding the common law.

In the Federal estate tax case of *Estate of Green v. United States*, 441 F.2d 303 (6th Cir. 1971), similar grant language in Michigan's "spouse allowance" statute (which gave its courts more discretion than the statute involved in the present case) was held to be mandatory and without contingencies and therefore nonterminable. Moreover, the Circuit Court held that "the Michigan widow's allowance is a right which vests at her spouse's death and is not defeated by her subsequent death or remarriage."[17] The Michigan statute interpreted by the court provided as follows:

(1) *The widow and minor children* constituting the family of a deceased man *shall have such reasonable allowances* out of the real and personal estate of such deceased *as the probate court shall judge necessary* for their maintenance during the progress of the settlement of the estate according to their circumstances but never for a longer period than until their shares in the estate shall be assigned to them nor for more than 1 year after the death of the decedent in an insolvent estate. On showing of necessity, such allowances may be continued from time to time in any solvent estate beyond such year, but such allowances beyond such year shall be charged as advancements from the estate against the interest of the widow or against the interest of the minor children, as the case may be. [Mich. Stat. Ann. sec. 27.3178(138), sec. 68 (Callaghan 1962) (repealed by 1987 Public Acts 642; replaced by Mich. Stat. Ann. secs. 27.5287 and 27.5288.) Emphasis added.]

Although the Circuit Court noted that there was adequate Michigan case law which established that the right to the "spouse allowance" vested at the date of the decedent's death and was not defeated by the surviving spouse's subsequent death or remarriage, the court, nevertheless, made a wholly independent review of Michigan's statutory law on the widow's allowance. In its review and holding, the court placed great emphasis on the strong predilection in favor of the "spouse allowance" that was present in the Michigan law.

In Minnesota, as in Michigan, there is a strong preference in favor of the "spouse allowance." Section 525.151, Minn. Stat. Ann., provides as follows:

[17]The court also held that invoking the necessary legal procedures to enforce the right, i.e, determination of amount, is not a condition or contingency precedent to the existence of the right. *Estate of Green v. United States*, 441 F.2d 303, 307 (6th Cir. 1971).

### 525.151. Allowance selection and maintenance payment

The surviving spouse, and conservators or guardians of the minor children, may select the property of the estate allowed to them under section 525.15(1), (2) and (3). The personal representative may make these selections if the surviving spouse or conservators or guardians of the minor children are unable or fail to do so within a reasonable time or if there are no conservators or guardians of the minor children. The personal representative may execute an instrument or deed of distribution to establish the ownership of such property. *He may determine maintenance in periodic installments not exceeding $500 per month for one year, if the estate is insolvent or 18 months if the estate is solvent,* and may disburse funds of the estate in payment of such maintenance. * * * [Emphasis added.]

Thus, under Minnesota law, the personal representative of the estate may independently award up to $500 per month as "spouse allowance," pursuant to section 525.151, Minnesota Statutes Annotated. This preference for the "spouse allowance" evidenced in Minnesota law, and the mandatory language of section 525.15(4), Minn. Stat. Ann., must be given proper regard in our interpretation of the statute in issue. After careful consideration we hold that under Minnesota law the "spouse allowance" is mandatory and contains no stated contingencies or conditions so that it vests absolutely upon the decedent's death. In reaching this conclusion, we have considered respondent's references to statutes of other jurisdictions whose courts have held the right to "spouse allowance" to be a terminable interest. Unlike the present case, respondent's referenced statutory language supports the "terminable" holdings.[18]

---

[18]Respondent draws analogies to the statutes of the following States: Nebraska, as cited in *United States v. Quivey*, 292 F.2d 252 (8th Cir. 1961); Tennessee, as cited in *Hamilton National Bank of Knoxville v. United States*, 353 F.2d 930 (6th Cir. 1965); Oklahoma, as cited in *Estate of Darby v. Wiseman*, 323 F.2d 792 (10th Cir. 1963); California, as cited in *Jackson v. United States*, 376 U.S. 503 (1964); Connecticut, as cited in *Estate of Rubinow v. Commissioner*, 75 T.C. 486 (1980); and Texas, as cited in *Estate of Snider v. Commissioner*, 84 T.C. 75 (1985). In each case referred to by respondent, the statute supported the holding that the "spouse allowance" as provided by the applicable statute was a terminable interest. Under the Texas statute the court was required to consider the facts and circumstances existing at the date of death, and those anticipated to exist in the first year after such death before awarding or denying the allowance. The granting of the allowance was contingent upon the surviving spouse not having separate adequate property. Under the Connecticut statute, the Probate Court had several crucial decisions to make before granting or denying the allowance, for example: Whether to grant the allowance, the amount of the allowance, the time period during which the allowance would run, whether the allowance vested retroactively, and whether it would terminate with subsequent death or remarriage. Under the California statute the Supreme Court found that the right to the "spouse allowance" was not an indefeasibly vested right at death because it was established in California case law that the right was lost

### The Homestead Interest

Minnesota statutes provide for a homestead interest to pass from a decedent to a spouse. If there are children, the spouse receives a life estate, with the remainder to the children. In this case, the spouse disclaimed her homestead interest and argues that her disclaimer causes the Minnesota laws of descent and distribution to provide her with a one-third fee interest in the "homestead" property. The essence of petitioner's theory is based upon a legal fiction which treats a disclaiming spouse as predeceasing the decedent with respect to the disclaimed property. Petitioner goes on to theorize that if Lorraine had predeceased decedent, then the homestead provisions would have become inoperative and Lorraine would have received a fee interest which would qualify for the marital deduction.

Respondent argues that Lorraine's disclaimer of her life estate in the homestead did not divest her children's remainder interest. Rather, Lorraine's disclaimer merely caused an acceleration of the children's interest from a remainder to a fee simple absolute. Thus, the one-third interest Lorraine received in the homestead does not qualify for the marital deduction because it passed to the children from the decedent. Petitioner counters that the disclaimer of Lorraine's life estate in the homestead nullified the statutory descent of the homestead interest as provided by section 525.145(b), Minn. Stat. Ann. Consequently, petitioner argues, the entire homestead interest passed pursuant to section 525.16(2), Minn. Stat. Ann., through which Lorraine received a one-third interest in fee. We find petitioner's position to be circuitous, at best, and we agree with respondent's position.

---

upon subsequent remarriage or death of the spouse. In the case of the Oklahoma statute, the Court of Appeals for the 10th Circuit found that under Oklahoma law even though the right to the "spouse allowance" comes into being on the death of the decedent, it is inchoate until the Probate Court enters an order for the allowance. Similarly, under the Tennessee statute, the court held that the right to the "spouse allowance" was a terminable interest because if the widow died before the allowance was set apart, the right would terminate. However, *Jackson v. United States, supra,* holds that the determination of whether the interest in the allowance is terminable must be made at the date of the decedent's death. In *United States v. Quivey, supra,* the court held that the right to the "spouse allowance" was terminable because the right would terminate if the widow died during the period of administration of the estate. We note that the language of this statute delegates discretion to the court in awarding the allowance. The statute provided that the "Judge may require [family maintenance] as the court shall judge necessary."

Decedent's interest in his real property passed to his wife and their children, pursuant to Minnesota statutory law of intestate succession, the pertinent parts which are as follows:.

525.145. Descent of homestead

(1)(b) *If there be children or issue of deceased children surviving, then [the homestead shall descend] to the spouse for the term of his natural life and the remainder in equal shares to such children and the issue of deceased children by right of representation.*

(2) *Where there is no surviving spouse and the homestead has not been disposed of by will it shall descend as other real estate.*

525.16. Descent of property

*Except as provided in sections 525.14 and 525.145, and subject to the allowances provided in section 525.15,* and the payment of the expenses of administration, funeral expenses, expenses of last illness, taxes, and debts, the estate, real and personal, shall descend and be distributed as follows:

\* \* \* \* \* \* \*

(2) *Real property*: To the surviving spouse an undivided one-third of all real property of which the decedent at any time while married to such spouse was seized or possessed, to the disposition whereof by will or otherwise such survivor shall not have consented in writing or by election to take under the will as provided by law, except such as has been transferred or sold by judicial partition proceedings or appropriated to the payment of the decedent's debts by execution or judicial sale, by general assignment for the benefit of creditors, or by insolvency or bankruptcy proceedings, and subject to all judgment liens;

\* \* \* \* \* \* \*

(4) *Subject to the preceding provisions of this section,* the whole estate, real and personal, except as otherwise disposed of by will shall descend and be distributed as follows:

(a) In equal shares to the surviving children and to the issue of deceased children by right of representation;

(b) If there be no surviving child nor issue of any deceased child, and if the intestate leave a surviving spouse, then to such spouse;

[Emphasis added.]

Petitioner places great emphasis on section 525.145(2), Minn. Stat. Ann., and interprets this in conjunction with section 525.532, subdivisions 2 and 5, to support its position. Subdivision 2 provides, in pertinent part, as follows:

A beneficiary may disclaim any interest in whole or in part, or with reference to specific parts, shares or assets thereof, by filing a disclaimer in court in the manner hereinafter provided. * * *

## Subdivision 5 provides that:

Unless the person by whom the interest was created or from whom it would have been received has otherwise provided by will or other appropriate instrument with reference to the possibility of a disclaimer by the beneficiary, the property in which the interest disclaimed existed *shall descend*, be distributed or otherwise be disposed of *in the same manner as if the disclaimant had died immediately preceding the death or other event which causes him to become finally ascertained as a beneficiary* and his interest to become indefeasibly fixed both in quality and quantity, and, in any case, the disclaimer shall relate for all purposes to such date, whether filed before or after such death or other event. However, one disclaiming an interest in a non-residuary gift, devise or bequest shall not be excluded, unless his disclaimer so provides, from sharing in a gift, devise or bequest of the residue even though, through lapse, such residue includes the assets disclaimed. * * * [Emphasis added.]

Petitioner argues that Lorraine's disclaimer triggered the language of section 525.532, subdivision 5, Minn. Stat. Ann., which states that "the property in which the interest disclaimed existed shall descend * * * in the same manner as if the disclaimant had died immediately preceding the death or other event which causes him to become finally ascertained as beneficiary." Consequently, petitioner argues that because Lorraine must be treated as having died before decedent for purposes of the disclaimer statute she also must be treated as having predeceased decedent for purposes of applying the homestead statute, sec. 525.145, Minn. Stat. Ann.. While petitioner's argument is correct up to the point of triggering the disclaimer language, the remaining analysis is flawed. Under petitioner's analysis, disclaimant's fictitious death for purposes of the disclaimer statute must be inferred into section 525.145(2), Minn. Stat. Ann., thereby causing the homestead to pass as if there is no surviving spouse. Thus, petitioner contends that Lorraine received a one-third interest in fee in all real property, including the homestead, which qualified for the marital deduction as provided in section 2056. We reject petitioner's interpretation of the Minnesota statutes. To hold otherwise, would present the anomalous and circuitous

result that Lorraine could divest the children of their remainder interest through disclaiming her life estate in the homestead. The Supreme Court of Minnesota has consistently held otherwise.

As early as 1891, the Supreme Court of Minnesota, rejecting the claim of a surviving spouse who sought to waive her right to a greater area of land in exchange for an interest in a smaller area, held that to permit such action "would convert her [surviving spouse's] life-estate in nearly 30 acres of land to a title in fee to one-third thereof, to the injury of other devisees and legatees named in the will." *Mintzer v. St. Paul Trust Co.*, 45 Minn. 323, 47 N.W. 973, 974 (1891). Moreover, and closer on point to the issue before us, the Minnesota Supreme Court held that the remainder interest in the homestead indefeasibly vests in the children at the date of decedent's death, subject only to the life estate of the surviving spouse. The court further held that no action taken by the surviving spouse could divest the children's interest. *In re Walberg's Estate*, 130 Minn. 462, 153 N.W. 876 (1915).

In *In re Walberg's Estate, supra*, Carrie Walberg died intestate survived by her husband-spouse and six minor children. Their homestead, which consisted of an 80-acre tract of land, continued to be used as the family home after her death. Approximately 18 months after Carrie Walberg's death, her husband remarried and continued to reside on the homestead, until his death, with his wife and children, including those from his second marriage. Upon his death, he left a will purporting to give all his property to his widow, including the interest in the homestead. In determining whether the interest in the homestead passed to the surviving spouse, the Supreme Court of Minnesota held:

On the death of Carrie Walberg, the title in fee to her homestead vested in her children subject only to the life estate of her surviving husband, and *no waiver or other act of his could impair the rights secured to the children by the statute. He could make such disposition of his life term as he saw fit, but he could not convert the homestead into assets of the estate, nor subject the fee which had vested in the children to any burdens whatever.* * * * [*In re Walberg's Estate, supra* at 878. Emphasis added.]

The effect of a qualified disclaimer is to treat the property disclaimed as though it never had been transferred from the decedent or donor to the disclaimant, i.e., as if the disclaimed property was transferred directly from the decedent or donor to the ultimate recipient of such property. The disclaimant is treated as having predeceased the decedent or the donee solely to avoid the vesting of the disclaimed interest in the disclaimant who, in the absence of such treatment, would be regarded as the transferor of the property for purposes of a transfer tax (gift or estate).

In Minnesota, all property interests from an intestate decedent are created by sections 525.14 through 525.173, Minnesota Statutes Annotated. These interests become, and remain, vested in the beneficiaries unless specifically disclaimed by them. In the present case, the remainder interest in the homestead became indefeasibly vested in the children on the date of decedent's death, and in the absence of the children's disclaimer, remained vested in them. Consequently, when Lorraine disclaimed her life interest in this property, the children's successive interest accelerated to a present interest and they held the homestead in fee.[19] We hold that the estate is not entitled to a marital deduction with respect to any portion of the "homestead" property.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[19]Petitioner argued on brief, without support in the record, that the Minnesota Probate Court awarded the spouse a one-third interest in the homestead. Petitioner conceded that the award is not binding upon us and we note that the reasoning of the Probate Court has not been provided. Under these circumstances, we afford no weight and give no further consideration to petitioner's argument on this point.