THOMPSON ANDREWS, Administrator, &c., *v.* ISAAC BRUMFIELD et al., Administrator, &c.

1. EXECUTOR AND ADMINISTRATOR : INTEREST OF ADMINISTRATOR AND DISTRIBUTEE IN THE ESTATE.—The legal title to a decedent's property is vested in the administrator for certain special purposes—for collecting and preserving the assets, paying the debts, and for distribution. Subject to this, the whole interest in the estate vests, immediately on his death, in the persons entitled under the statute to distribution; and where there are no debts to be collected or paid, and where it is unnecessary for the purpose of distribution, that an administrator should be appointed, and none is in fact appointed, the legal title to the personal estate vests, without distribution, in the distributee, " in the same way and manner" as the real estate descends to the heir.

2. SAME : DISTRIBUTION : EFFECT OF MAKING TO TENANT FOR LIFE.—It is a settled rule in this court, that distribution of chattels personal, made to the tenant for life under a will, is also a distribution to the remainderman, and, as a general rule, an act of complete and final administration. *Hall* v. *Hall,* 27 Miss. R. 458.

3. SAME : WHERE THERE IS NO LIMITATION OVER.—Where a personal chattel is bequeathed to one for life, with no limitation over, and the testator dies intestate as to the *quasi* reversion expectant upon the determination of the life estate, and the reversion vests, as in other cases of intestacy, in the next of kin, who being as clearly made known by the statute of distributions as if the estate were expressly limited to them by the will, a distribution and delivery to the

tenant for life, will be a complete act of administration and distribution to the next of kin.

4. POWER: CONSTRUCTION OF.—A devise to one for life, with directions that the property "shall be delivered to the legatee as soon after the" testator's "death as possible, that he may have full control, and be empowered to dispose of the same as he may think proper," vests in the devisee an estate for life only, but with the unrestricted power of disposing of the fee.   See 16 J. R. 587; 14 S. & M. 184: 1 Sugd. Pow. 65.

5. WILL: CONSTRUCTION OF: MEANING OF "ESTATE."—The word "estate," used in a will, embraces both real and personal property, unless it appear from the context that it was used in a less extensive signification.   12 Mad. 592; Cowper, 279.

6. POWER OF UNRESTRICTED DISPOSITION A PART OF THE ESTATE.—A power of unrestricted disposition, appended to a life interest in property, is a part of the "estate" of the tenant for life.

7. POWER: WHEN EXECUTION: RULE IN RELATION TO.—Whether or not a testator has executed a power of appointment vested in him, is a question of intention, to be arrived at by the same rules of construction which apply in other cases in the interpretation of wills; and if he use general words, such as "all my estate," or "all the balance of my estate," which in themselves are sufficient to cover an execution of the power, it will be sufficient, although no reference is expressly made in the will to the power or the subject-matter upon which it may be exercised; and especially so, where it appears that these general words would be inoperative unless construed to be an execution of the power.

APPEAL from the District Chancery Court at Monticello. Hon. B. C. Buckley, vice-chancellor.

This bill was filed in the court below, by the administrator *de bonis non* of James Andrews, deceased, against the administrators of Rachael Gray, formerly Rachael Andrews, to recover certain slaves and other personal property, which had been bequeathed by the said James Andrews, in his will, to the said Rachael, for the term of her natural life.

It appeared that in 1851, James Andrews died, after having made and published his last will and testament, which was duly probated at the instance of his widow Rachael Andrews, and John Sandifer, who were charged with its execution. They, at the same time, qualified as executrix and executor, and in 1853 made a final settlement, and were discharged from the further execution of their duties as such.

The 1st, 2d, and 7th clauses of James Andrews' will, are as follows: "Item 1st. I give and bequeathe to my beloved wife,

Rachael Andrews, to have, and to hold and enjoy during her natural lifetime, all the land, farm, farming utensils and implements, household and kitchen furniture, all the stock of hogs, cattle, and sheep, that I may possess at the time of my death; also, all the corn, fodder, and stock of provisions, and three head of good horses, such as she may select out of the stock I may have on hand at the time of my death. Item 2d. In addition to the property I have bequeathed to my beloved wife, Rachael Andrews, as per 'Item 1st,' I will and bequeathe unto her the following slaves, to wit, (here follows a descriptions of the slaves,) to have, hold and enjoy during her natural lifetime. * * * Item 7th. I will and bequeathe, that all the property, both real and personal, that I have given to my dearly beloved wife, Rachael Andrews, as mentioned in the first and second items of this my last will and testament, shall be delivered into her possession as soon after my death as possible, that she may have full control of the same, and be empowered to dispose of the same as she may think proper."

The property bequeathed in this will was distributed and delivered to Mrs. Andrews during the pendency of the administration on her husband's estate. Afterwards she married one Gray, and had issue by the second marriage one child, and her husband died. In 1853, during the last illness of Mrs. Gray, she made a nuncupative will, by which she made several small bequests to different persons, in the previous clauses in her will; and by the last clause she willed as follows : "That she gave, willed and bequeathed, that the balance of her estate, after paying all expenses and legacies, should be sold and equally divided between her two children, Andrew Jackson Andrews and Thomas Sherod Gray." This will was duly probated, and the defendants appointed her administrators, with the will annexed. During her lifetime, Mrs. Gray exchanged one of the slaves bequeathed in the will, for another of equal value, and continued in possession of the other property till her death.

After her death, Thompson Andrews procured letters of administration *de bonis non* on James Andrews' estate, and brought this suit to recover the personal estate given in the will to Mrs. Andrews for life.

The chancellor dismissed the bill and the plaintiffs appealed.

*John T. Lumpkin* for appellee.

1. The testatrix of appellees held only a life-estate in the property in controversy, having no power whatever to dispose of the reversion. *Rail* v. *Dotson*, 14 S. & M. 176 ; 1 Jarm. on Wills, 315.

2. If it be conceded that the power exists, it was never properly executed. 3 Tom. L. Dec. 191; 1 Sug. Pow. 385, § 19; 2 Ves. Jr. 593; *Doe* v. *Byrd*, 11 East, 49; 1 Sug. Pow. 392, 398, 401; *Jones* v. *Curry*, 1 Swanst. 66; Wils. Cha. Ca. 24.

*D. W. Hurst*, for appellee,

In reply contended, that Mrs. Gray had the full power to dispose of the fee; and second, that she had properly executed it. On the first point he cited *Dotson* v. *Rail*, 14 S. & M. 176; Sug. on Pow. 267, 276. On the second point, he cited Sugd. on Pow. 211, 217, 218, 223.

SMITH, C. J., delivered the opinion of the court.

This suit was originally instituted in the Vice-Chancery Court for the Southern district; and a decree dismissing the bill, having been rendered in that court, the cause is brought up by appeal.

The material points of the case are as follows: James Andrews died in 1851, having previously made and published his last will and testament, by which he disposed of his estate, real and personal, and appointed his wife, Mrs. Rachel Andrews, and John J. Sandifer his executrix and executor. Mrs. Andrews and Sandifer qualified as such, and in 1853 presented to the proper court a final account of their administration of the estate, and were thereupon discharged from their executorial duties.

By the first clause of the will the testator gave and bequeathed to Mrs. Andrews, "All the land, farm, farming utensils and implements, household and kitchen furniture; all the stock of hogs, cattle and sheep," of which he might die possessed; "and also all the corn, fodder, and stock of provisions, and three head of good horses, as she might select out of the stock he might have on hand at the time of his death," "to have, hold, and enjoy during her natural lifetime."

By the second clause the testator bequeathed to his widow certain slaves, particularly described, "together with all their increase, if any, to have, hold and enjoy, during her natural lifetime."

And the seventh clause is in these words: "I will and bequeathe that all the property, both real and personal, that I have given to my dearly beloved wife, Rachel Andrews, as mentioned in the first and second items of this, my last will and testament, shall be delivered into her possession as soon after my death as possible, that she may have full control of the same, and be empowered to dispose of the same as she may think proper."

The property thus bequeathed to Mrs. Andrews, was delivered to her upon the final distribution of the estate. She retained possession of the whole of it, which was not consumed in the use, with the exception of one of the slaves, which she exchanged, and received in lieu thereof another of equal value, until her death, which event occurred in 1854. By her will, which was duly probated, she bequeathed the whole of her estate to the several legatees therein named; and letters of administration, with the will annexed, were granted on her estate to the appellees, who qualified, and took into their possession the property in controversy.

Sandifer, the co-executor, having also died, letters of administration *de bonis non* on the estate of James Andrews, deceased, were granted to the appellant, who filed this bill to recover the said property, as unadministered effects, belonging to the estate of the testator.

If, as contended in behalf of the appellant, Mrs. Andrews did not take the unqualified estate in the property bequeathed to her, but only a partial interest, to be put an end to by her death, the testator died intestate as to the *quasi* reversion expectant upon the determination of that interest. This is clear from all the provisions of the will; for, if the bequests in favor of the widow did not carry the fee, no disposition whatever was made of the reversionary interest. That interest, or *quasi* reversion, vested in the executors, or in the heirs-at-law or next of kin of the testator, whose rights were ascertained and fixed by the law upon his death.

Without questioning the proposition that the title to the chattels personal bequeathed to the widow vested in the executors, subject to her life estate therein, and that the reversionary interest did not vest directly in the next of kin by operation of law, that interest constituted assets in the hands of the executors, to be disposed of in due course of administration.

Upon the facts of the case, as above stated, therefore, the question first to be considered is, whether the distribution made upon the estate, and the delivery of the property bequeathed to Mrs. Andrews, was not, so far as that particular portion of the deceased's estate was concerned, a full and complete administration? This question necessarily involves the title of the appellant to recover. For it is manifest, if the distribution to the tenant for life was in effect a distribution to those who, as next of kin, were entitled to the *quasi* reversion, the appellant cannot claim to recover in his representative character.

It is settled, in this court, that distribution to the tenant for life of a chattel personal, is a distribution to the remainderman, and is, as a general rule, an act of complete and final administration. *Hall* v. *Hall*, 27 Miss. R. 458; *Hunt* v. *Tatum*, (not yet reported.)

But the case before us is somewhat different. No disposition was made of the property beyond the bequest to Mrs. Andrews; and upon the assumption that she took, under the will, a limited estate, a reverter, or, to speak with greater accuracy, a *quasi* reverter existed by operation of law, in the property bequeathed to her. Upon the determination of the estate limited to Mrs. Andrews, the persons entitled to the reversion would succeed to it by virtue of the statute of distributions, and not under the provisions of the will; which is not the case when the remainder is limited. In such case the remainderman, as well as the tenant of the particular estate, would be entitled under the bequest in the will.

The personal property of a decedent, not disposed of by his will, "descends to and is distributed among his heirs, in the same way and manner that real estate, not divided, descends" by the statute, (Hutch. Dig. 624, § 52,) subject, however, to the rights of the administrator. But his title exists only for special purposes;

for the collection and preservation of the assets; for the payment of the debts, and for distribution. These duties require that the executor or administrator should be invested with the title requisite to their performance. Hence, notwithstanding the peculiar phraseology of the statute, it has always been held that he acquired, by the grant of administration, the legal title to the personalty; and, consequently, that distribution, or some equivalent act, is necessary to confer upon the distributees a complete and perfect title to the personal estate of the deceased.

This principle has been, generally, observed with strictness by this court. *Browning et al.* v. *Watkins et al.*, 10 S. & M. 482; *Marshall* v. *King*, 23 Miss. R. 85.

But we apprehend, that in cases where neither moneys are to be collected, nor debts to be paid, and where it is not necessary for the purpose of distribution that an administrator should be appointed, and none is in fact appointed, the legal title to the personal estate should be held to vest, without distribution, under the statute, "in the same way and manner" that the title to the real estate vests in the heir-at-law. And, accordingly, in cases in which slaves were the subject of controversy, it has been held in this court, that the parties were entitled to recover upon their title derived under the statute of distributions, and where no distribution had been made. *M'Rea* v. *Walker*, 4 How. 455; *Farve's heirs* v. *Graves*, 4 S. & M. 707.

But the question before us is not whether the reversionary interest vested directly in the persons entitled to distribution upon the testator's undivided effects, or not, but whether the facts do not show that there was so far as the property in dispute is concerned, a complete administration of the estate.

The interest remaining in the testator after the life estate given to Mrs. Andrews, was an estate in expectancy, and not a chattel in actual possession. It would perish with the property in which it existed, and might therefore be destroyed before the death of the tenant for life. A distribution of it was, hence, impracticable. The persons entitled to distribution of the testator's property, in respect to which he died intestate, were as clearly ascertained, and as much fixed as were the legatees and their rights under the

VOL. III.—8

will. And as the debts were all paid, and nothing remained to be done, except distribution among the parties entitled to the succession, it seems to be clear that the delivery of the property to the tenant for life would be, in effect, a delivery to the parties entitled in reversion. At all events, it must be considered to have had the effect of passing the naked legal title, which existed in the legal representatives of the testator. The parties claiming the reversionary estate would take directly under the statute, if not in virtue of an act of distribution.

No title to the property in contest, therefore, vested in the appellant by virtue of the letters of administration *de bonis non*, granted to him; he was therefore not entitled to recover.

This terminates the present suit; but it does not settle the controversy. We will proceed therefore to examine the questions arising upon the construction of the will.

It is contended in behalf of the appellant. First. That Mrs. Andrews took under the will only a life estate, without any power whatever to dispose of the reversion. Second. That if such power, was, in fact, conferred by the will, she died without having executed it.

In the first and second clauses of the will, the property bequeathed to Mrs. Andrews, is limited to her, expressly, for the term of her natural life. The language is too plain to admit of the least doubt as to the intention. Hence, if the will contained no other provision, it could not be questioned that only a life estate was given to her.

But by the seventh clause, in which the testator declares it to be his will, that all the property given to Mrs. Andrews, by the 1st and 2nd clauses, "shall be delivered into her possession as soon after (his) death as possible; that she may have full control of the same, and be empowered to dispose of the same as she may think proper," it is insisted that this result has been changed.

We think, that this language admits of but one construction. It appears, manifestly, to have been the testator's intention to confer an unrestricted power of disposition. Taking all of the claims together, as disclosing the testator's intention, they show first, that the property was given for life, and secondly, that the legatee

should possess the power to sell, give or transfer to whomsoever she might elect.

A devise to one that he shall do with the land at his discretion, is equivalent to a devise of the land to him, to do with it at his discretion. In either case the fee would vest in the devisee. Sugden, Pow. 64. So where the testator gave the use of his real estate to one, to use and dispose of at pleasure, it was held to amount to a devise in fee. *Jackson ex dem. Bush and Wife* v. *Coleman*, 2 Johns. 391. If a life estate had not been expressly limited to Mrs. Andrews, there can be no doubt that a mere power would not have been conferred by, but that she would have taken a fee under the seventh clause of the will. As it is, only a power was given. For it is settled that a power appended to an express life estate will not enlarge it into a fee simple. 16 Johns. 587; 14 S. & M. 184; 1 Sugden, Pow. 65.

One of the slaves included in the bequests to her was exchanged or sold by Mrs. Andrews. With that exception it is not insisted that she ever attempted to execute the power, until she made and published her will. We must, therefore, examine its provisions; as the construction to be applied to them, will determine the validity of the second ground taken by the appellant's counsel, to wit, that there never was a sufficient or legal execution of the power.

In her will, the testatrix made to different persons, bequests of specific articles of personal property, of money, and of the use of a female slave; and lastly she "gave, willed and bequeathed that the balance of her estate, after paying all expenses and legacies, should be sold and equally divided between her two children, Andrew Jackson Andrews, and Thomas Sherod Gray."

The will contains no direct allusion to the power, nor any specific reference to the subject to which it applied; and for that reason it is insisted, the will was not a good execution of the power.

The cases, in the English books, on the subject of the execution of powers are very numerous and conflicting. We shall not attempt to review them. The cases referred to, as settling the rule, are *Sir Edward Clere's Case*, 6 Co. 17 b.; *Andrews* v. *Emmet*, 2 Bro. Ch. Rep. 300; *Standen* v. *Standen*, 2 Ves. Jr.

589; *Langham* v. *Neung*, 3 Ves. Jr. 467; *Nannock* v. *Horton*, 7 Ib. 391, and *Bennet* v. *Aburrow*, 8 Ib. 609. That rule as stated in *Hales* v. *Margerum*, 3 Ves. Jr. 301, is, that to execute a power, there must be a direct reference to it, or a clear reference to the subject, or something upon the face of the will, or independent of it; some circumstance, which shows that the testator could not have made that disposition without having intended to comprehend the subject of his power. This rule seems to be sustained by the greater number of adjudicated cases, if not by the greater weight of reason. It has been reluctantly followed by some of the judges; and a great master of jurisprudence has said that he was not sure that in nine cases out of ten, the intention was not defeated.

Chancellor Kent, citing some of the leading cases on the subject, lays down the rule somewhat differently. He says, that if a will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power. If the act can be good in no other way, than by virtue of the power, and some part of the will would otherwise be inoperative, and no other intention can be imputed to the testator, the act or will, shall be deemed an execution of the power. *Bradish* v. *Gibbs*, 3 Johns. Ch. Rep. 551.

According to this view, although the principle recognized falls short of what ought to be the rule, the question, whether there has been an execution of the power or not, is more a question of intention to be ascertained by the ordinary rules, which apply in all cases in the construction of wills. It is true, the English courts always professed to regard it as a question of intention. 8 Ves. Jr. 616. But certain arbitrary and inflexible rules were adhered to, which, it is confessed, oftener than otherwise, defeated the real intention.

Testing the question under consideration, by the doctrine as stated by Chancellor Kent, the will, in this case, was a good execution of the power.

By the residuary clause, the testatrix, after providing for the payment of all expenses and legacies, bequeathed the balance of her estate to her two children. It does not appear that she possessed, when the will was made, (and her death took place imme-

diately afterwards,) any estate, real or personal, that was not covered by the power, except one slave, which was disposed of by a previous bequest. That slave, consequently, did not pass to the residuary legatees. From all that appears by the record, or on the face of the will, if it did not operate upon the property covered by the power, which was then in the possession of the testatrix, it must, of necessity, fail in its most important provisions. Most of the specific legacies would be defeated, and the provision for her two children, which we must suppose, was her main purpose, frustrated. Her intention is not to be doubted. She meant to execute the power, or she meant nothing.

The only possible doubt which can exist, if any does exist, must arise out of the language of the residuary clause. Is the language there used sufficiently comprehensive and explicit to include her whole property, of which she died possessed, and which had not been previously disposed of ?

In *Shaw* v. *Bull*, 12 Mad. 592, it was held that the word "es-tate" will carry real as well as personal property; and that the contrary intention ought to appear to induce the court to put upon that word a less extensive signification than it naturally bears. In *Hogan* v. *Jackson*, Cowper, 299, Lord Mansfield said, it is now clearly settled that the words "all my estate," will pass everything a man has; but if the word "all" is coupled with the word "personal," or a local description, then the gift will pass only personalty.

"The balance of my estate," the words in the bequest, must be held to pass all the estate; "everything" of which the testatrix died possessed. It is difficult to argue the question, whether the property bequeathed in James Andrews' will, and then in her possession, was or was not a part of her estate. It is too plain to admit of argument on either side. She had a life estate in it, with the unrestricted power to give, sell, or bequeathe, for whatever purpose, or to whomsoever she might elect. "How could she have had it more than by the enjoyment during her life, and the power of disposing to whatever person, and in whatever manner she pleased ?" *Standen* v. *Standen*, 2 Ves. Jr. 593. By her will, she gives all her estate. Using the language she does, it would

be hard to say that she did not intend to include the property over which the power extended.

The same rule, in regard to the execution of powers, is, generally, applicable to both real and personal estate. If the property is described it will pass. But it is said, the very nature of real and personal estate, have established some distinctions. Every disposition of real estate is specific, even a general residuary devise ; for only that to which the party is entitled at the time will pass. But it is not so with bequests of personal property. A will of personal estate speaks only from the death of the testator, and passes only what he then happens to possess, and is therefore said not to be specific; and " consequently," says Sugden, "although I happen to have none, yet it will not apply, specifically, to personal property within the power." 1 Sugd. Pow. 210.

This rule is not founded on satisfactory reasons. If one possess a life estate in chattels, with the unrestricted power of disposition, the power is as much a part of his estate as his right to enjoy it. In such a case, the property is as much the property of the tenant for life as any other part of his estate. It is said, that whether a party did or did not intend to execute the power, is always a question of intention. How, therefore, can it be said that when a testator uses general words, which pass the whole of his personal estate, they do not apply to that part of it to which the power attaches ? The rule is purely technical and extremely arbitrary, and excludes all consideration of the circumstances under which a will was made, which might indicate very clearly that the testator intended what his language naturally imported ; that is to dispose of his entire personal estate.

This doctrine has not been, invariably, followed even by the courts in England. The cases of *Wallop* v. *Lord Portsmouth; Standen* v. *Standen*, 2 Ves. Jr. 593 ; and particularly the great case of *Hurst* v. *Winchelsea*, 2 Burr. 879, are instances. And the case before us furnishes a fair illustration of the impropriety of a rigid adherence to the rule.

The will was a nuncupative will, and was made in *articulo mortis*. The testatrix must therefore have intended and expected that her will would operate upon her personal property, whatever it was,

which she then possessed, and not, as in ordinary cases, upon the personal estate of which she might die possessed, at some future and distant time. The residuary bequest was specific in the same sense that a general devise of real estate is held to be specific. It passed, and could only pass the specific articles of personal property which she possessed at the time of making it. And unless it be held to pass the property in the power, it must be inoperative, as there was nothing else to which the residuary clause could attach.

Decree affirmed.