ESTATE OF HENRI P. WATSON, DECEASED, HENRI P.
WATSON, JR., EXECUTOR, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 31911-85.          Filed March 1, 1990.

*Lauch M. Magruder, Jr.,* for the petitioner.
*Robert W. West,* for the respondent.

HAMBLEN, *Judge:* Respondent determined a deficiency of $437,231 in the Federal estate tax liability of the estate of Henri P. Watson. After trial, respondent amended his answer to conform the pleadings to the proof. In his amended answer, respondent asserted that the correct deficiency in petitioner's estate tax is $470,370.72. After concessions, the issues remaining to be decided are: (1) Whether the full value of 1,073.18 acres of farmland located in Sunflower County, Mississippi, is included in the decedent's gross estate; (2) whether the widow's allowance paid to the decedent's surviving spouse qualifies for the marital deduction; and (3) whether rent proceeds from decedent's farmland were assets of the decedent's estate that were omitted from the gross estate on decedent's estate tax return.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner was an estate domiciled in and administered under the laws of Mississippi, under the jurisdiction of the Chancery Court of Holmes County, Mississippi. At the time the petition was filed, the executor, Henri P. Watson, Jr., was a resident of Jackson, Mississippi. Petitioner filed a Federal estate tax return which was prepared by Robert Wingate, the decedent's accountant. Mr. Wingate has been a certified public accountant for almost 40 years. Mr. Wingate, who had known the decedent for about 40 years, did all of the decedent's accounting work.

Decedent, Henri P. Watson, was a resident of Lexington, Mississippi, until his death on January 19, 1982. Decedent was born on August 4, 1892, which made him 89 years old at his death. Decedent had been a farmer all of his life, farming in and around Holmes and Sunflower Counties, Mississippi.

On September 27, 1927, the decedent acquired a tract of farmland in Sunflower County, Mississippi, containing 1,073.18 acres. This farmland was approximately 70 to 75 miles from the decedent's home in Lexington. Decedent farmed this land from 1927 until late 1978, which was through the 1978 crop year.

Prior to 1969, the decedent's son, Henri P. Watson, Jr., lived near his father. In 1942, Henri P. Watson, Jr., acquired approximately 1,020 acres adjoining his father's land. Prior to 1969, the decedent and his son farmed the two tracts of land (1,073.18 acres and 1,020 acres) as a partnership. However, the decedent and his son never formally conveyed their land to the partnership. Decedent and his son established a bank account in the name of "Watson and Watson" for use in the farming operation.

On October 23, 1961, the decedent executed a deed transferring an undivided one-half interest in his 1,073.18-acre tract of land to his son, Henri P. Watson, Jr., as trustee for the use and benefit of the decedent's four grandchildren. The deed stated that the trust would terminate when the youngest of the beneficiaries became 21 years of age. The youngest grandchild became 21 years old on July 31, 1981. There was no provision in the trust deed for the disposition of the corpus of the trust after the trust

terminated. No subsequent conveyance of the half interest in the 1,073.18 acres of farmland was made to the decedent's grandchildren, and the record is silent as to the ultimate disposition of the property.

The October 1961 deed provided that the trustee had the authority to use any part of the income or corpus of the trust property for the support and maintenance of the grandchildren. The deed authorized the trustee to—

handle, manage, operate, rent, lease for oil and gas and other mineral purposes, encumber by deed of trust or otherwise, and to sell all or any part of, or any interest in, the aforesaid property on any terms deemed proper by said trustee, all with the same authority and discretion and to the same extent as though said property was owned in fee simple by said trustee, and my trustee shall have full authority to invest, reinvest and otherwise handle any funds or other property received from any sale or other transaction involving said land with the same authority and discretion as though said funds or other property belonged to said trustee personally, and my said trustee shall have full authority to expend any part of the income or corpus from any of such funds as he sees fit for the proper support and maintenance of my said grandchildren * * * .

The trustee appointed under the October 1961 deed, Henri P. Watson, Jr., did not maintain any trust books or records and did not file any Federal income tax returns for the trust. No distributions of the original trust corpus were made to the beneficiaries. However, the decedent's four grandchildren reported rental income from farmland on their Federal income tax returns as follows:

| Year | Norman | James | Mary | Henri III |
|------|--------|-------|------|-----------|
| 1982 | $9,250 | $14,250 | $2,900 | - - - |
| 1981 | - - - | - - - | - - - | - - - |
| 1980 | - - - | - - - | - - - | - - - |
| 1979 | 1,250 | 1,250 | 1,250 | - - - |
| 1978 | 1,250 | 1,250 | 1,250 | $1,250 |
| 1977 | 1,250 | 1,250 | 1,250 | (1) |
| 1976 | 1,250 | 1,250 | 1,250 | - - - |
| 1975 | 1,250 | - - - | 1,250 | 1,250 |
| 1974 | 4,250 | 4,250 | 4,250 | 4,250 |
| 1973 | 4,250 | 4,250 | 4,250 | 4,250 |

Mr. Wingate prepared Federal income tax returns for each of the beneficiaries. The rent to the grandchildren was paid

---

[1]The blanks for 1976 and 1977 for Henri III and for 1975 for James signify that returns were not available for these years.

from the Watson and Watson bank account. Rental income from the property placed in trust was paid into accounts for the benefit of or directly to the beneficiaries. A 1,077-acre farm in Sunflower County similar to the Watson land, but of better quality, was rented for about $13 an acre from approximately 1963 to 1968, around $18 an acre from approximately 1968 to 1973, and about $27 an acre from 1973 to 1978.

Mr. Wingate prepared gift tax returns for the decedent and his wife reflecting a gift to the decedent's four grandchildren of a half interest in the decedent's 1,073.18 acres of farmland. The gift tax returns reflected no reservation of any interest in the property. However, the Atlanta Service Center of the Internal Revenue Service, where the returns should have been filed, has no record that the decedent ever filed gift tax returns for the transfer at issue.

The trust deed was drafted by Lee Spence, an attorney who worked for the trust department of Deposit Guaranty National Bank in Jackson, Mississippi. Mr. Spence came to the office of Pat Barrett, the decedent's lawyer, in Lexington, Mississippi, to draft the trust deed. Mr. Spence held himself out to Mr. Barrett as an expert in trust instruments. After Mr. Spence drafted the trust deed, it was typed by Mr. Barrett's secretary. Mr. Spence went over the draft with the secretary very thoroughly before the draft was typed. After Mr. Spence left the office, the draft was typed and Mr. Barrett read the typed document. After Mr. Barrett read the document, he mailed it to Mr. Spence. Mr. Spence then wrote Mr. Barrett a letter stating that in Mr. Spence's opinion, the document was sufficient for Mr. Watson's purpose.

The decedent's son, Henri P. Watson, Jr., also conveyed a portion of his own land to his children in trust. The form of this conveyance was similar to the form of the decedent's trust deed. However, Henri P. Watson, Jr., never paid any rent to his children for his use of the property.

In approximately 1969, Henri P. Watson, Jr., moved to Jackson, Mississippi, which is about 125 to 130 miles away from the two parcels of farmland. From the time Henri P. Watson, Jr., moved to Jackson until 1980, all of the income and expenses associated with farming both parcels of land

were reported by the decedent on his Federal income tax returns. The decedent and his son agreed that after Henri P. Watson, Jr., moved to Jackson, the decedent would get the income from the two parcels and Henri P. Watson, Jr., would get improvements to his 1,020 acres. The improvements to Henri P. Watson, Jr.'s land consisted of land-leveling of his 1,020 acres to a grade that could be flood irrigated. After 1967, at the suggestion of the Watsons' accountant, Mr. Wingate, no partnership tax returns were filed by the decedent or his son. Mr. Wingate's recommendation that the Watsons stop filing partnership returns was based on the fact that as Henri P. Watson, Jr., became less active in the farming venture and became involved in other business activities, it became more difficult for Mr. Wingate to determine what was the partnership's and what was Henri P. Watson, Jr.'s. Mr. Wingate insisted that the Watsons stop filing partnership returns and simply report the income from the farming venture on their individual returns. Henri P. Watson, Jr., did not report any of the farm income or expenses on his Federal income tax returns from 1969 to 1979.

From the time the decedent purchased the 1,073.18 acres until his death, he paid the property taxes on the land. After the Watson and Watson bank account was established, the payments for property tax were made by checks drawn on that account. In 1968 and before, the property tax payments were deducted on the partnership tax return. After 1968, the property tax payments were deducted as an expense on the decedent's individual Federal income tax returns. The decedent treated the payments for insurance premiums on improvements to the land in the same manner as the property tax payments. The property taxes on the 1,020 acres of farmland owned by Henri P. Watson, Jr., were also paid from the Watson and Watson account. After 1968, the decedent deducted these taxes as an expense on his Federal income tax return. After 1968, the decedent paid property taxes, insurance premiums, improvement costs, and other expenses for the 1,020 acres owned by Henri P. Watson, Jr., from the Watson and Watson account. After 1968, all income in excess of expenses from farming the two parcels went into the Watson and Watson account.

From 1969 to 1977, the decedent was responsible for day-to-day operations of farming both tracts of land. The decedent visited the farm about once a week from 1968 to 1978. During these weekly visits, the decedent would give his instructions to his farm manager. During this period from 1968 to 1978, Henri P. Watson, Jr., visited the farm two or three times a month and sometimes more frequently. If the decedent was not feeling well, his son would go up to the farm and pay the payroll. From 1968 to 1978, decedent would deliver the farm financial information to his accountant, Mr. Wingate, each month, unless he was sick or otherwise unable to deliver the information. If the decedent was unable to take the information to Mr. Wingate, his son would take it.

In early 1979, the decedent and his son decided that all active farming by either of them on the two parcels of land would cease. Most of the farm equipment was sold at auction on February 27, 1979. The total amount received from the auction was $90,008.23. During the crop year 1979 and thereafter until decedent's death, both tracts of farmland were rented to Morgan Brothers for a cash rental per year. The decedent and his son agreed that the rental income received from Morgan Brothers would go to the decedent to build up money for his widow. The decedent and his son agreed that if at some point the improvements to Henri P. Watson, Jr.'s land were not sufficient, Henri P. Watson, Jr., might take part of the rent.

On his Federal income tax returns, the decedent reported farm rental income of $70,800 for 1979, $57,074 for 1980, and $9,929 for 1981. In 1980, Henri P. Watson, Jr., reported $25,000 in rental income on his Federal income tax return. In 1981, Henri P. Watson, Jr., received $67,202.76 in rental income and reported it on his own Federal income tax return.

The 1979 rental payment of $70,800 was deposited in the Watson and Watson bank account on January 31, 1979, at the First National Bank of Holmes County. The 1980 rental payment was paid by a check dated February 20, 1980, in the amount of $78,211.92. The check was endorsed "Watson and Watson, Henri P. Watson, Jr.," and was deposited in the Unifirst Federal Savings & Loan Association of Jack-

son, Mississippi. The 1981 rent was paid by two checks. The first check, dated January 14, 1981, was for $6,000, and was deposited in the Watson and Watson account at the First National Bank of Holmes County. The second check, dated February 11, 1981, was for $71,131.76 and was deposited in the account of H.P. Watson, Jr., in the Bank of Hazelhurst, Mississippi.

The Agricultural Stabilization and Conservation Service office made program payments that were attributable to the 1,073.18-acre tract of land owned by the decedent and the 1,020-acre tract owned by Henri P. Watson, Jr., All of these payments were made to the decedent and were deposited in the Watson and Watson bank account. The decedent retained these payments and reported them on his Federal income tax returns.

About 5 years before his death in 1982, the decedent suffered a stroke. The decedent remained mentally alert until his death, but he had difficulty walking and seeing after the stroke, and it hurt him to ride in a car. As a result, after the decedent's stroke, his son assumed control of the farming venture and made the decisions relating to the farming venture, although he continued to discuss business decisions with the decedent and visited the decedent every week until he died.

In the years after Henri P. Watson, Jr., moved to Jackson, Mississippi, he had several business interests that cumulatively constituted his full-time occupation. Henri P. Watson, Jr., was engaged in the sale of land on a commission basis (1970 to 1986), the leasing of farmland (1970 to 1982), owning oil leases (1970 to 1982), the leasing of oil lands (1970 to 1982), owning a small business corporation (1970 to 1982), owning a cattle and grain farm (not the 1,073.18 acres or the 1,020 acres) (1970 to 1982), buying and selling land (1968 to 1981), the sale of timber (1973 to 1976), and being a partner in Annandale Farms of Lexington, Mississippi (1970). The cattle farms were located in Texas, and in Hinds and Madison Counties, Mississippi. Annandale Farms was located at Hazelhurst, Mississippi, approximately 35 miles south of Jackson. The small business corporation was also located at Hazelhurst, Mississippi. The

other farms and other business activities of Henri Watson, Jr., were located in and around Jackson, Mississippi.

The decedent's widow, Corrinne W. Watson, dissented from her husband's will and elected to take her statutory share. She later settled her claim against the estate for $290,000. In addition, Mrs. Watson was allowed 1 year's support of $30,000 by the Chancery Court. This support allowance is known as a widow's allowance.

## OPINION

The first issue for our decision is whether the decedent's gross estate includes the entire value of the 1,073.18-acre tract of farmland. Respondent contends that the decedent's gross estate includes the entire value of the 1,073.18 acres of farmland. Respondent bases this contention on three separate arguments. First, respondent argues that when the trust terminated prior to the decedent's death, the corpus reverted to the decedent's ownership and left the decedent with a full fee ownership in the 1,073.18 acres which must be included in his gross estate under section 2033.[2] Second, respondent argues that the decedent retained for his life the use, possession, control, and enjoyment of the entire parcel of farmland despite the 1961 trust deed and that as a result, the entire value of the parcel is included in the decedent's gross estate under section 2036. Finally, respondent argues that if the decedent transferred the use, possession, enjoyment, and right to income from the land, he did so within 3 years of his date of death, and that the entire value of the farmland is therefore included in the gross estate under sections 2035(a) and 2035(d)(2).

Petitioner contends that the trust corpus did not revert to the decedent after the termination of the trust because the decedent intended the trust corpus to pass to the trust beneficiaries after the trust terminated. Petitioner further contends that the decedent did not retain the use, possession, control, and enjoyment of the entire parcel of farmland after the creation of the trust in 1961.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

We will first address the question of whether the entire interest in the farmland must be included in the decedent's estate under section 2033. The value of the decedent's gross estate includes, under sections 2031(a)[3] and 2033,[4] the value of all property to the extent of his interest therein at the time of his death. The value of the gross estate includes the value of all property "beneficially owned by the decedent at the time of his death." Sec. 20.2033-1(a), Estate Tax Regs. Property in which the decedent does not have beneficial ownership is not includable in the decedent's gross estate, even if the decedent had legal title to the property. *Estate of Spruill v. Commissioner*, 88 T.C. 1197, 1224 (1987).

Respondent contends that the decedent had a beneficial interest in the entire value of the farmland because the trust corpus reverted to the decedent after the termination of the trust. The trust instrument makes no provision for the trust corpus upon termination. Petitioner argues that the decedent intended the trust corpus to pass to the beneficiaries of the trust after the termination of the trust, and that the decedent's intent on this point can be determined from extrinsic evidence. Petitioner contends that the facts and circumstances surrounding the creation of the trust deed show that the decedent intended the entire undivided interest in the trust corpus to vest in the beneficiaries after the termination of the trust. Petitioner does not argue that the decedent transferred any interest in the property at issue to the trust beneficiaries outside of the trust instrument, and no evidence before the court suggests that the decedent made any such transfer. Respondent contends that extrinsic evidence cannot be used to show the intent of the decedent because there is no ambiguous language in the trust. Respondent made a continuing objection to the admission of testimony concerning the decedent's intent regarding disposition of the trust corpus after the termination of the trust. Respondent's objection was based on the grounds of relevancy and

[3]SEC. 2031. DEFINITION OF GROSS ESTATE.

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

[4]SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

hearsay. To determine whether the testimony at issue is relevant, we must determine whether extrinsic evidence can be used to determine the intent of the decedent.

Generally, for purposes of the estate tax, we first must determine the legal interests and rights created under State law, and then decide whether the interests and rights so created are sufficient to justify including the property in the gross estate. *Morgan v. Commissioner,* 309 U.S. 78, 80-81 (1940); *United States v. Manny,* 645 F.2d 163, 166 (2d Cir. 1981); *Estate of Pfohl v. Commissioner,* 70 T.C. 630, 633 (1978). As we stated in *Ward v. Commissioner,* 87 T.C. 78, 92 (1986),

In making this determination, we are, "in effect, sitting as a state court," being bound by decisions of the Supreme Court of [Mississippi] and "giving 'proper regard' to relevant rulings of other courts of the State." [*Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967); *Estate of Fulmer v. Commissioner,* 83 T.C. 302, 306 (1984).]

Therefore, to determine if extrinsic evidence regarding the decedent's intent is relevant, we must determine whether extrinsic evidence could be used by a Mississippi court construing the decedent's trust. Mississippi courts apply general rules of construction of written instruments to the construction of trust instruments whether they are contracts, deeds, or wills. *Hart v. First National Bank of Jackson,* 233 Miss. 766, 103 So. 2d 406, 409 (1958). Under Mississippi law, the duty of a court in construing wills and trusts "is to ascertain and give effect to the intention of the testator. In arriving at this intention, the court is required to consider the entire instrument, sometimes said 'From the four corners of the instrument.' Where the instrument is susceptible of more than one construction, it is the duty of the court to adopt that construction which is most consistent with the intention of the testator." *Malone v. Malone,* 379 So. 2d 926, 928-929 (Miss. 1980). In ascertaining the settlor's intent, "effect must be given to the plain and unambiguous language used in the trust instrument." *Hart v. First National Bank of Jackson,* 103 So. 2d at 409. In *Hart v. First National Bank of Jackson,* 103 So. 2d at 410, the Mississippi Supreme Court quoted 54 Am. Jur., Trusts, sec. 17, as follows:

In the case of a trust based on a written instrument, the intention of the trustor is to be ascertained from the language thereof, and the court may not go outside the language in an effort to give effect to what it conceives to have been the actual intent or motive of the trustor. If the language is unambiguous and perfectly clear, there is no field for the play of construction; if the trustor has clearly expressed one intention, the court cannot impute to him another, and parol evidence is inadmissible to add, take away from, or even to explain such clear expression of intention. * * *

An instrument is not considered ambiguous on a given point just because the instrument is silent on that point. See *Stovall v. Stovall*, 360 So. 2d 679 (Miss. 1978). "The expressed intent of the testator is the guiding star rather than 'what he wished' or may have wished." *Stovall v. Stovall, supra* at 681. Mississippi courts have authority to give effect to a settlor's intent only where that intent has received some form of expression in the trust instrument. See *Tinnin v. First Bank of Mississippi*, 502 So. 2d 659 (Miss. 1987). Since the decedent made no expression within the trust instrument of his intent regarding the disposition of the trust corpus after the termination of the trust, we cannot give effect to the decedent's intent as expressed in parol evidence. Accordingly, we find that the testimony on the subject of the decedent's intent is irrelevant and therefore inadmissible. Since we have decided that the testimony at issue is inadmissible because it is irrelevant, we need not decide whether it is inadmissible as hearsay.

The decedent's accountant, Mr. Wingate, testified that he prepared gift tax returns for the decedent regarding the transfer of the half interest in the decedent's 1,073.18 acres. Mr. Wingate's drafts of these returns were introduced into evidence. Petitioner maintains that Mr. Wingate's preparation of gift tax returns indicates that the decedent intended to transfer the entire income and remainder interest in the property. We conclude that the drafts and Mr. Wingate's testimony regarding the preparation of gift tax returns are irrelevant on the issue of the decedent's intent because they are extrinsic evidence that would not be admissible to prove intent under Mississippi law. In addition, we conclude that the drafts are of no probative value regarding whether a gift of the entire income and remainder interest occurred because petitioner has not proven that the decedent actually

filed gift tax returns for the transfer at issue. The Government maintains a permanent file of all gift tax returns that have been filed. The record contains evidence that no gift tax returns were filed by the decedent for the transfer of the half interest in the farmland. Even if they had been filed, the contents of the gift tax returns would not have been dispositive of the issue before us. Since the decedent apparently decided not to file gift tax returns for the transfer of the half interest in the farmland, the drafts prepared by Mr. Wingate are of no probative value. Even if gift tax returns had been filed, that fact would not be dispositive of the issue before us. If the decedent had made a gift of income only (and not the income and remainder interests) gift tax returns would still have been required. Thus, the alleged fact of filing proves nothing. Accordingly, we give the handwritten drafts prepared by Mr. Wingate no weight in our determination of whether a gift of the entire income and remainder interest in the property occurred.

Since the decedent did not express his intent in the trust instrument regarding disposition of the trust corpus after the termination of the trust, we must look to Mississippi law to determine whether a beneficial interest in the trust corpus returned to the decedent on the termination of the trust. Respondent cites *Andrews v. Brumfield*, 32 Miss. 107 (1856), for the proposition that a reversion exists under the circumstances of the instant case. In *Andrews v. Brumfield, supra*, a decedent died and left property to his surviving widow for life, with the power to dispose of the property as she thought proper. The widow retained possession of the property for her life, and upon her death, she bequeathed the property to her children. A representative of her husband's estate brought suit, claiming that the property belonged to the husband's estate as unadministered property, and that the widow had no right to make distribution of the property by will. The court found that the widow only had a life estate with a power of disposition in the property, not a fee interest. The court stated that—

No disposition was made of the property beyond the bequest to Mrs. Andrews; and upon the assumption that she took, under the will, a limited estate, a reverter, or, to speak with greater accuracy, a quasi

reverter existed by the operation of law, in property bequeathed to her. [*Andrews v. Brumfield,* 32 Miss. at 112.]

Therefore, where a will provides for a life estate but fails to make any provision for the disposition of the property after the end of the life estate, the property will revert to the estate of the testator after the end of the life estate.

While *Andrews v. Brumfield, supra,* is not directly on point, we agree with respondent that *Andrews v. Brumfield, supra,* suggests that the Mississippi Supreme Court would find that a beneficial interest in the trust corpus returned to the decedent after the termination of the trust in the present case. In both *Andrews v. Brumfield, supra,* and the present case, an interest in property was transferred for a limited period, and no provision was made for the disposition of the interest after that period. The Mississippi Supreme Court held that in the life estate situation of *Andrews v. Brumfield, supra,* a reverter or a quasi-reverter would exist, and the property would belong to the testator's estate. By analogy, in the present case, where a beneficial interest in property was passed for a limited period with no disposition of the beneficial interest after that period, the beneficial interest would return to the settlor of the trust after the end of the limited period.

Respondent also cites *Bond v. Dukate,* 118 Miss. 516, 79 So. 86, 87 (1918), in which the Mississippi Supreme Court stated that if a testamentary trust created by a valid will were inoperative, a trust would result in favor of the decedent's heirs under the will. The court quoted from 1 Jarman on Wills 481 (6th ed.) as follows:

> Sometimes a testator distinctly shows an intention to create a trust but does not go on to denote with sufficient clearness who are to be its objects; the effect of which obviously is that the devisees or legatees in trust (whom we suppose to be distinctly pointed out) hold the property for the benefit of the person or persons on whom the law, in the absence of disposition, casts it; in other words, the gift takes effect to the legal interests but fails as to the beneficial interests.

*Bond v. Dukate, supra,* is not directly on point since in that case the court was discussing the disposition of the trust corpus upon the failure of a trust for vagueness, not the termination of a trust after the period of the trust. *Bond v. Dukate, supra,* indicates that where a beneficial

interest is not adequately disposed of, the beneficial interest returns to the settlor. In the present case, the beneficial interest passed to the trust beneficiaries until the youngest beneficiary turned 21. However, the decedent did not provide for the disposition of the beneficial interest after this point. *Bond v. Dukate, supra,* suggests that the Mississippi Supreme Court would rule that the decedent owned a beneficial interest in the trust corpus after the termination of the trust. Accordingly, we find that the decedent was the beneficial owner of the trust corpus after the trust terminated. Since no evidence indicates that the decedent gave up this interest before his death, we find that the decedent was the beneficial owner of the entire interest in the 1,073.18 acres of farmland on the date of his death. Consequently, the entire interest in the 1,073.18 acres is included in his gross estate under section 2033.

The next issue for our decision is whether the widow's allowance paid to the surviving spouse qualifies for the marital deduction provided in section 2056(a). Petitioner claimed a section 2056(a) marital deduction for, among other things, a $30,000 widow's allowance granted to the decedent's widow by the Holmes County, Mississippi, Chancery Court. Respondent contends that petitioner is not entitled to the marital deduction for the widow's allowance because the allowance is a nonqualified terminable interest. The burden of proof is upon petitioner to establish that the widow's allowance at issue qualifies for the section 2056(a) marital deduction. Rule 142(a).

Under section 2056(a), the value of the taxable estate is generally determined by deducting from the value of the gross estate an amount equal to the value of any interest in property passing from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. See also section 2051. This deduction is known as the marital deduction.

An estate is entitled to the marital deduction only with respect to a qualifying property interest passed from the decedent to his surviving spouse. A terminable interest in property may not qualify for the marital deduction. Sec. 2056(b)(1). Section 20.2056(b)-1(b), Estate Tax Regs., defines a "terminable interest" as "an interest which will terminate

or fail on the lapse of time or on the occurrence or the failure to occur of some contingency." Under section 2056(b)(1), a terminable interest in property will not qualify for the marital deduction if (1) another interest in the same property passed from decedent to some other person for less than adequate consideration and (2) by reason of its passing, such other person or his heirs or assigns may possess or enjoy any part of the property after the termination of the spouse's interest. Congress only intended to allow the marital deduction to a decedent's estate in those situations where the qualifying property interest "will be includible in the gross estate of the beneficiary or donee spouse unless it has been dissipated in the interval." S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 305. See also *Estate of Holland v. Commissioner,* 64 T.C. 499, 502 (1975). Thus, the statute was designed so as to prevent qualifying property from escaping the estate tax a second time upon the subsequent death of the surviving spouse.

Whether the widow's allowance as provided under Mississippi law constitutes a terminable interest within the meaning of section 2056 must be determined as of the date of the decedent's death. *Jackson v. United States,* 376 U.S. 503, 508 (1964); *Estate of Radel v. Commissioner,* 88 T.C. 1143, 1146 (1987); *Estate of Abely v. Commissioner,* 60 T.C. 120, 123 (1973), affd. 489 F.2d 1327 (1st Cir. 1974); see also *Estate of Snider v. Commissioner,* 84 T.C. 75, 79 (1985). The decedent's widow's right to the widow's allowance as of the date of the decedent's death must be determined under the law of Mississippi. *Estate of Abely v. Commissioner, supra.* If, under Mississippi law, the widow's right to a widow's allowance vests upon the decedent's death but terminates or fails upon the occurrence or nonoccurrence of certain contingencies, then the widow's allowance is a terminable interest within the meaning of section 2056(b)(1). *Estate of Abely v. Commissioner, supra* at 123; *Hamilton National Bank of Knoxville v. United States,* 353 F.2d 930, 932 (6th Cir. 1965); see *Estate of Green v. United States,* 441 F.2d 303, 305 (6th Cir. 1971). In making the determination of Mississippi law, we are bound by decisions of the Supreme Court of Mississippi and must give proper regard to

relevant rulings of other courts of Mississippi. *Commissioner v. Estate of Bosch, supra.*

Miss. Code Ann. section 91-7-135 (1972) provides a widow's allowance of 1 year's support for the widow of a decedent. Court-appointed appraisers are required by the statute to set aside the widow's allowance. Miss. Code Ann. secs. 91-7-135, 91-7-109 (1972). The action of the appraisers in making the widow's allowance is not final, but is advisory only, and the chancellor may increase or decrease the amount. *Beckett v. Howarth,* 237 Miss. 394, 115 So. 2d 48 (1959); *Moseley v. Harper,* 202 Miss. 442, 32 So. 2d 192 (1947); *Prentiss v. Turner,* 170 Miss. 496, 155 So. 214 (1934). If the widow renounces her husband's will, the chancellor may, within his discretion, provide for the allowance of 1 year's support. *Sandifer v. Sandifer,* 237 Miss. 464, 115 So. 2d 46 (1959).

Petitioner contends that Miss. Code Ann. section 91-7-135 (1972) gives the decedent's widow an absolute unconditional right to receive the widow's allowance and that this right was vested as of the date of the decedent's death. Petitioner cites *Westbrook v. Shotts,* 200 Miss. 456, 27 So. 2d 683 (1946), and *Edwards v. McGee,* 27 Miss. 92 (1854), in support of its contention. In *Westbrook v. Shotts, supra,* the Mississippi Supreme Court considered Miss. Code section 561 (1942), which is virtually identical to Miss. Ann. Code section 91-7-135 (1972). In *Westbrook v. Shotts, supra,* the court held that the widow's allowance is not conditioned on the payment by the widow of amounts she owed to the estate. The Mississippi Supreme Court made the following statement in *Westbrook v. Shotts,* 27 So. 2d at 683:

> Appellant attacks that part of the decree making conditional her right to allowance as widow for a year's support. We think this point is well taken. Her right thereto is absolute, Code 1942, Secs. 561, 564, and ought not to be involved in issues raised by claims of the administrator against her. *Prentiss v. Turner,* 170 Miss. 496, 155 So. 214; *Pratt v. Pratt,* 155 Miss. 237, 124 So. 323.

In *Edwards v. McGee, supra,* the guardian for the minor children of a decedent petitioned the Probate Court of Holmes County, Mississippi, to appoint three commissioners to set aside a 1-year support allowance for the minor children from the estate of the decedent. The guardian for

the minor children applied for the support allowance because the widow of the decedent died without making the application for the support allowance. The statute at issue provided that:

It shall be, and is hereby made the duty of the probate judges of the several counties of this State, upon the application of the widow of any deceased person, to appoint three commissioners, whose duty it shall be to select and set apart, out of the stock of provisions or effects of said deceased person, one year's provision for the widow and children. Hutch. Co., p. 680.

The court stated that the statute "gives to the widow and children of a deceased person, a clear right to one year's support out of his estate. It gives no greater right to the widow, than it gives to the children." *Edwards v. McGee,* 27 Miss. at 93. The court further stated that "The question is, Did the law confer upon the children the right asserted; and if so, was it absolute, or dependent entirely upon the life of their mother? It is clear that the law conferred the right. It is equally clear that when, in consequence of her death, she could not assert the right for them, the guardian might do so." *Edwards v. McGee,* 27 Miss. at 93. The court thus held that the support allowance for the children was not dependent on the decedent's widow surviving to apply for the support allowance.

*Westbrook v. Shotts, supra,* refers to the right to the widow's allowance as "absolute," and *Edwards v. McGee, supra,* states that the widow and children have "a clear right" to the support allowance. Petitioner argues that because a widow has an "absolute" right and "a clear right" to the widow's allowance, the right to the widow's allowance is a vested interest. Black's Law Dictionary at 1401 (5th ed. 1979) defines "vested" as, in part, "Fixed; accrued; settled; absolute. Having the character or given the rights of absolute ownership; not contingent; not subject to being defeated by a condition precedent." Therefore, we agree with petitioner that under *Westbrook v. Shotts, supra,* and *Edwards v. McGee, supra,* the Mississippi widow's allowance is a vested interest. However, respondent argues that the interest is terminable because the widow can lose her right to the widow's allowance under some circumstances. In *Thomas v. Bailey,* 375 So. 2d 1049 (1979), the

Mississippi Supreme Court held that even though a widow was entitled to a widow's allowance as a matter of right, the widow's allowance was properly denied where the widow did not make a motion for the allowance or otherwise indicate that she wanted a widow's allowance prior to the closing of the estate. Therefore, a widow can lose the right to widow's allowance by failing to act prior to the closing of the estate.

Respondent argues that the Mississippi widow's allowance is a terminable interest because (1) a widow can lose her right to the widow's allowance by her failure to act, and (2) at the time of the decedent's death, the amount of the widow's allowance was not fixed because the chancellor has final authority over the amount of the allowance. We must decide, therefore, whether the possibility that a widow could lose her otherwise absolute vested right to the widow's allowance through her failure to act and the requirement that the chancellor make a final decision regarding the amount of the allowance are contingencies that could cause the widow's allowance to terminate or fail for purposes of section 2056.

Respondent's argument is similar to the argument that the Government made in *Estate of Green v. United States, supra*. In *Estate of Green v. United States, supra*, the Sixth Circuit held that the requirements that the widow file a petition for the widow's allowance and that the Probate Court fix the amount of the allowance do not make the Michigan widow's allowance a terminable interest. The Sixth Circuit stated that—

> The government's main argument appears to us to be that even if the Michigan widow's allowance statute creates a property right in the widow which vests as of her spouse's death, and is not terminated by her death or her remarriage, it should nonetheless be held to be terminable under section 2056(b) because 1) the vested right is "inchoate" and can only be fixed in amount by the Probate Court proceeding and order determining "reasonable allowances," and 2) because in any event, the widow must file a petition for the allowance and, hence, impliedly might waive the allowance by failing to file. [*Estate of Green v. United States*, 441 F.2d at 307.]

The Sixth Circuit went on to state that—

it seems to us if either of these conditions were held to be an "event or contingency" occasioning terminability under section 2056(b), that we would be holding that Congress for all practical purposes had repealed the Allowance for Marital Deduction. [*Estate of Green v. United States*, 441 F.2d at 307.]

The Sixth Circuit stated that the Government's interpretation was absolutely repugnant to the specific language and purposes of section 2056(a). The Sixth Circuit quoted from *Hamilton National Bank of Knoxville v. United States*, 353 F.2d 930, 932-933 (6th Cir. 1965), on the subject of the widow's allowance, as follows:

It has been uniformly held the compensation qualifies for the marital deduction, and invoking the necessary legal procedures to enforce the right is not a condition or contingency precedent to its existence. [Citations omitted.]

To hold that an interest is terminable only because legal procedures are invoked to enforce an interest which is otherwise vested at the date of the husband's death, is to hold that all elective rights, such as the widow's allowance and the statutory interest in lieu of dower, are disqualified as marital deductions. [Footnote reference omitted.]

In the instant case, we are faced with a situation very similar to the situation in *Estate of Green v. United States, supra.* In Mississippi, a widow has an "absolute" and "clear right" to the widow's allowance, but a widow can lose her right to the widow's allowance by failing to file for the allowance before the close of the decedent's estate, and the chancellor is required to fix the amount of the allowance. Because of the similarity of the Michigan widow's allowance and the Mississippi widow's allowance, the reasoning of the Sixth Circuit in *Estate of Green v. United States, supra,* applies to the issue of whether the Mississippi widow's allowance is a terminable interest.

Under Mississippi law, a widow has an absolute right to the widow's allowance provided for in Miss. Code Ann. section 91-7-135 (1972). *Westbrook v. Shotts, supra; Edwards v. McGee, supra.* The possibility that, as a practical matter, a widow could lose that right if the appraisers fail to set aside the widow's allowance and the widow fails to claim the allowance before the decedent's estate closes does not change the fact that the widow had an absolute right under Miss. Code Ann. section 91-7-135 (1972) at the date of the decedent's death. We agree with

the Sixth Circuit that "To hold that an interest is terminable only because legal procedures are invoked to enforce an interest which is otherwise vested at the date of the husband's death, is to hold that all elective rights, such as the widow's allowance and the statutory interest in lieu of dower, are disqualified as marital deductions." *Estate of Green v. United States,* 441 F.2d at 308. Without a clear expression of intent from Congress that all rights such as the Mississippi widow's allowance should be considered terminable interests, we will not treat the necessity of invoking legal procedures as a condition or contingency making the Mississippi widow's allowance a terminable interest for purposes of section 2056. Accordingly, we hold that the requirement under Mississippi law that the chancellor make a final determination of the amount of the allowance and the possibility that the widow may lose her right to the allowance by failing to take some action to request the allowance are not conditions or contingencies that make the Mississippi widow's allowance a terminable interest. Consequently, we hold that the widow's allowance paid to the decedent's widow qualifies for the marital deduction provided in section 2056(a).

The final issue for our decision is whether rental proceeds from the decedent's farmland were assets of the decedent's estate that were omitted from the gross estate on the decedent's estate tax return. Respondent contends that the portion of the 1980 and 1981 rent attributable to the decedent's farmland is an asset of the decedent's estate includable in the gross estate under sections 2031 and 2033. Respondent bears the burden of proof on this issue because he raised the issue after issuing the notice of deficiency. Rule 142(a). The value of the decedent's gross estate includes the value of all property to the extent of the decedent's interest therein at the time of his death. Secs. 2031(a) and 2033. The value of the gross estate includes the value of all property "beneficially owned by the decedent at the time of his death." Sec. 20.2033-1(a), Estate Tax Regs. Respondent must therefore prove that the decedent had an interest includable in the decedent's gross estate under section 2033.

The decedent and his son, Henri P. Watson, Jr., rented the decedent's 1,073.18-acre parcel of farmland and Henri P. Watson, Jr.'s 1,020-acre parcel of farmland to Morgan Bros. in 1980 and 1981. For 1980, the decedent reported $57,074 in rental income, and Henri P. Watson, Jr., reported $25,000 in rental income. For 1981, the decedent reported $9,929 in rental income, and Henri P. Watson, Jr., received and reported $67,202.76 in rental income. The 1980 rental payment in the amount of $78,211.92 was deposited in the Unifirst Federal Savings & Loan Association of Jackson, Mississippi. The 1981 rent was paid by two checks. One check, in the amount of $6,000, was deposited in the Watson and Watson account at the First National Bank of Holmes County. The other check, in the amount of $71,131.76, was deposited in the account of H.P. Watson, Jr., in the Bank of Hazelhurst, Mississippi.

Respondent's basic argument seems to be that decedent was entitled to $79,644.70 in rental income in 1980 and 1981, but that he only received $6,000 of this amount, and that as a result, decedent had a beneficial interest at his date of death in the remaining $73,644.70. Respondent contends that Henri P. Watson, Jr., owed the decedent a balance due of $73,644.70. (Respondent took the total rental income received for 1980 and 1981 of $155,343.68 ($78,211.92 plus $6,000 plus $71,131.76) and multiplied it by 51.27 percent (1,073.18 divided by the total acreage of 2,093.18) to arrive at a share for decedent of $79,644.70. Respondent then reduced this amount by the $6,000 deposited in the Watson and Watson account to arrive at the $73,644.70 he claims is the balance due to the decedent.) Respondent contends that "No matter what the reason the decedent's son kept this money, it belonged to his father and, on the date of his father's death, it was an asset of the estate." Respondent stated on brief that "The decedent's son had no 'right' to the decedent's share of the income. Petitioner has not contended that the son had such a right. Such a right could only arise on a gift made by the decedent to his son. No gift (likely taxable) has been alleged."

Respondent appears to be arguing that the decedent had a beneficial interest at the date of his death in the rental

proceeds from his 1,073.18 acres for 1980 and 1981 unless petitioner can prove that there was a gift from the decedent to his son. In reality, petitioner does not have the burden of proving that there was a gift from the decedent to his son. Respondent bears the burden of proving that the decedent had a beneficial interest at the date of his death in $73,644.70 that was not included in his gross estate.

Respondent contends that the 1980 rental payment of $78,211.92 deposited in the Unifirst Federal Savings & Loan Association was never transferred to the decedent and that the decedent never had possession and control of this money. Respondent further contends that the second 1981 rental payment of $71,131.76 was retained by the decedent's son in his bank account, and that no portion of this amount was ever paid or transferred to the decedent.

The record is not clear regarding the 1980 rental payment of $78,211.92. At one point, Henri P. Watson, Jr., testified that the entire amount remained in the account at Unifirst Federal Savings & Loan Association. At another point, Henri P. Watson, Jr., testified that he only took $25,000 of the rental income for 1980. With regard to the 1981 rental payment, Henri P. Watson, Jr., testified that he kept the difference between the $9,929 reported by the decedent and the 1981 total rent of $77,131.76 (i.e., $6,000 plus $71,131.76). We find the testimony regarding the 1981 rent to be clear and credible. Accordingly, we find that Henri P. Watson, Jr., retained $67,202.76 of the rental proceeds for 1981. However, even if we assume that Henri P. Watson, Jr., kept the entire $78,211.92 for 1980 in addition to the $67,202.76 he kept for 1981, we find that respondent has failed to prove that the decedent had a beneficial interest at the date of his death in $73,644.70 that was kept by Henri P. Watson, Jr.

The decedent and his son agreed when they rented their land that the decedent would at first keep all of the rental proceeds, and Henri P. Watson, Jr., would get improvements to his land. They also agreed that if the improvements were ever not a sufficient return for Henri P. Watson, Jr., Henri P. Watson, Jr., would take part of the rent. For 1981, the decedent and his son agreed that the decedent would take $9,929 and that Henri P. Watson, Jr., would take the rest of

the rent. Petitioner contends that these agreements concerning the division of rental proceeds were part of a partnership agreement between the decedent and his son. Respondent contends that after 1967 there was no partnership and therefore no partnership agreement. We need not resolve the issue of whether a partnership existed after 1967 because we find that regardless of whether a partnership existed after 1967, respondent has not met his burden of proving that the decedent had a beneficial interest on the date of his death in rent proceeds held by Henri P. Watson, Jr. Even if the agreement is not considered a partnership agreement, respondent has not introduced sufficient evidence to prove that the decedent did not intend to make a gift to his son in 1980 and 1981 or that the son did not keep a larger portion of the rent proceeds in those years in exchange for his greater managerial role as the decedent's health failed. Furthermore, respondent introduced no evidence to show that the division of the rent proceeds was a result of a loan from the decedent to his son or that Henri P. Watson, Jr., was acting as a trustee of the rent proceeds for his father. The evidence in the record indicates no intention on the part of the decedent that the rent proceeds that went to Henri P. Watson, Jr., would ever be returned to the decedent. Consequently, we find that respondent has failed to prove that the decedent had a beneficial interest at his date of death in any of the rental proceeds retained by his son.

To reflect the foregoing,

*Decision will be entered under Rule 155.*